1   Thomas R. Burke (State Bar No. 141930)
    DAVIS WRIGHT TREMAINE LLP
2   505 Montgomery Street, Suite 800
    San Francisco, California  94111
3   Telephone:  (415) 276-6500
    Facsimile:  (415) 276-6599
4   Email: thomasburke@dwt.com

5   Abigail B. Everdell (*pro hac vice forthcoming*)
    DAVIS WRIGHT TREMAINE LLP
6   1251 Avenue of the Americas, 21st Floor
    New York, New York  10020
7   Telephone:  (212) 489-8230
    Facsimile:  (212) 489-8340
8   Email:   abigaileverdell@dwt.com

9   Attorneys for Defendants Candide Group, LLC
    and Morgan Simon

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14   CORECIVIC, INC.,                        | Case No. 4:20-cv-03792-WHA

15                      Plaintiff,           | Assigned to the Hon. William Alsup

16   v.                                      | **NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT**

17   CANDIDE GROUP, LLC and MORGAN SIMON,    | [Cal. Code Civ. Proc. § 425.16]

18                      Defendants.          | [Supporting Declaration and Exhibits Thereto, and Request for Judicial Notice Filed Concurrently]

19

20                                            Judge:      Hon. William Alsup
                                             Date:       October 22, 2020
21                                            Time:       8:00 a.m.
                                             Location:   San Francisco Courthouse
22                                                        Courtroom 7 – 19th Floor
                                                         450 Golden Gate Avenue
23                                                        San Francisco, CA  94102

24                                            Action Filed:         March 4, 2020
                                             Action Transferred:   June 7, 2020
25

26

27

28

DAVIS WRIGHT TREMAINE LLP

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

1.      PLEASE TAKE NOTICE that on October 22, 2020, in Courtroom 12 of the United States District Court for the Northern District of California, located on the 19th Floor in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, defendants Candide Group, LLC ("Candide") and Morgan Simon ("Simon") (together, "Simon" or "Defendants") will and do move this Court, pursuant to California Code of Civil Procedure ("C.C.P.") § 425.16 (the "anti-SLAPP statute"), for an order striking the Complaint filed by Plaintiff CoreCivic, Inc. ("CoreCivic"), for the following reasons:

1.      The Anti-SLAPP statute applies to all of CoreCivic's claims because they arise from Simon's free speech made in a public forum about public issues.  Memorandum ("Mem.") § II.  The burden is thus on CoreCivic to establish a probability that it will prevail (C.C.P. § 425.16(b)(1)), and it cannot, for the following reasons:

2.      CoreCivic has not alleged and cannot allege Simon's post of September 25, 2018 was published or republished within the one-year limitations period.  Mem. § III.A.

3.      CoreCivic has not alleged and cannot allege that statements at issue concerning family separation are materially false, and even "implication" alleged by CoreCivic would amount to a non-actionable expression of opinion.  Mem. § III.B.

4.      CoreCivic has not alleged and cannot allege that statements at issue concerning lobbying are actionable; they are protected opinion, and are not defamatory.  Mem. § III.C.

5.      CoreCivic has not alleged and cannot allege that Simon published the statements at issue with actual malice.  Mem. § III.D.

If the Court decides that CoreCivic can meet its burden with respect to any of its claims or specific statement at issue, Simon requests that the Court grant her motion to strike as to the remaining claims and/or statements alleged.  *See Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016).

This motion is based on this notice; the attached memorandum; the concurrently filed request for judicial notice and declaration of Thomas R. Burke ("Burke Dec.") with Exhibits 1-12; any other matters of which this Court may take judicial notice; all pleadings, files, and records in this action; and such other argument as this Court may receive at the hearing on this motion.

DAVIS WRIGHT TREMAINE LLP

1

DATED: August 6, 2020

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
ABIGAIL B. EVERDELL

By:   /s/ Thomas R. Burke
       Thomas R. Burke

Attorneys for Defendants Candide Group, LLC
and Morgan Simon

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

   A.   The Parties .................................................................................................... 2

   B.   Simon's Forbes Posts ................................................................................... 3

   C.   CoreCivic Takes Issue With the Forbes Posts ............................................ 5

   D.   The Complaint .............................................................................................. 6

      1.   The Family Separation Statements .................................................... 6

      2.   The Lobbying Statements ................................................................... 8

ARGUMENT ............................................................................................................. 8

I.    STANDARD ON A SPECIAL MOTION TO STRIKE ................................... 8

II.   THE ANTI-SLAPP STATUTE APPLIES TO CORECIVIC'S CLAIMS ........ 9

III.  CORECIVIC'S CLAIMS FAIL AS A MATTER OF LAW ........................... 10

   A.   The Sept. 25, 2018 Post Is Outside the Statute of Limitations, and Was Not Republished 10

   B.   The Family Separation Statements Are Not Actionable ............................ 10

      1.   The Family Separation Statements Are Not Materially False ......... 11

      2.   The Family Separation Statements Are Non-Actionable Opinion ... 13

   C.   The Lobbying Statements Are Not Actionable ......................................... 15

      1.   The Lobbying Statements Are Opinion ............................................ 15

      2.   The Lobbying Statements Are Not Defamatory .............................. 16

   D.   CoreCivic Has Not Pled and Cannot Plead Actual Malice ...................... 18

      1.   CoreCivic is a Public Figure ............................................................ 19

      2.   CoreCivic Does Not Plausibly Allege, and Cannot Show, Actual Malice .................... 21

CONCLUSION ......................................................................................................... 24

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................9

*Barnes-Hind, Inc. v. Superior Court*,
 181 Cal. App. 3d 377 (1986) .....................................................................................17

*Barrett v. Rosenthal*,
 40 Cal. 4th 33 (2006) ..................................................................................................9

*Bartholomew v. YouTube, LLC*,
 17 Cal. App. 5th 1217 (2017) ...................................................................................17

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .............................................................................................9, 19

*Bose Corp. v. Consumers Union of U.S., Inc.*,
 466 U.S. 485 (1984) ...................................................................................................23

*Braun v. Chronicle Publ'g Co.*,
 52 Cal. App. 4th 1036 (1997) .....................................................................................8

*CACI Premier Tech., Inc. v. Rhodes*,
 536 F.3d 280 (4th Cir. 2008) ....................................................................................20

*Carr v. Forbes, Inc.*,
 259 F.3d 273 (4th Cir. 2001) ....................................................................................20

*Clark v. Viacom Int'l Inc.*,
 617 F. App'x 495 (6th Cir. 2015) ..............................................................................10

*Clifford v. Trump*,
 339 F. Supp. 3d 915 (C.D. Cal. 2018) ......................................................................15

*Cochran v. NYP Holdings, Inc.*,
 58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) .....................13, 16

*Copp v. Paxton*,
 45 Cal. App. 4th 829 (1996) .....................................................................................20

*Corman v. Blanchard*,
 211 Cal. App. 2d 126 (1962) ....................................................................................18

*DARE America v. Rolling Stone Magazine*,
 101 F. Supp.2d 1270 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) ...........................22

ii

DAVIS WRIGHT TREMAINE LLP

*DC Comics v. Pac. Pictures Corp.*,
  706 F.3d 1009 (9th Cir. 2013) ..............................................................................8

*FilmOn.com Inc. v. DoubleVerify Inc.*,
  7 Cal. 5th 133 (2019) ...........................................................................................9

*Flowers v. Carville*,
  310 F.3d 1118 (9th Cir. 2002) ........................................................................9, 23

*Forsher v. Bugliosi*,
  26 Cal. 3d 792 (1980) ....................................................................................12, 17

*Gardner v. Martino*,
  563 F.3d 981 (9th Cir. 2009) ..............................................................................13

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ............................................................................................19

*Gomes v. Fried*,
  136 Cal. App. 3d 924 (1982) ..............................................................................17

*Harris v. Curtis Publ'g Co.*,
  49 Cal. App. 2d 340 (1942) ................................................................................18

*Hebrew Acad. of San Francisco v. Goldman*,
  42 Cal. 4th 883 (2007) ........................................................................................10

*Herring Networks, Inc. v. Maddow*,
  No. 19-cv-1713-BAS-AHG, 2020 WL 2614857 (S.D. Cal. May 22, 2020) .................13, 14, 15

*Issa v. Applegate*,
  31 Cal. App. 5th 689 (2019) ................................................................................11

*Jackson v. Mayweather*,
  10 Cal. App. 5th 1240 (2017) ..............................................................................17

*Kelsey K. v. NFL Enterprises, LLC*,
  254 F. Supp. 3d 1140 (N.D. Cal. 2017) ................................................................9

*Koch v. Goldway*,
  817 F.2d 507 (9th Cir. 1987) ..............................................................................13

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) ..........................................................................23

*Masson v. New Yorker Magazine*,
  501 U.S. 496 (1991) ............................................................................................11

*McDowell v. Paiewonsky*,
  769 F.2d 942 (3d Cir. 1985) ...............................................................................20

DAVIS WRIGHT TREMAINE LLP

iii

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ................................................................... 19

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ......................................................................................... 13

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................................... 22

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ....................................................................... 17

*Oja v. U.S. Army Corps of Eng'rs*,
    440 F.3d 1122 (9th Cir. 2006) ..................................................................... 10

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ........................................................... 13, 14, 15

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828, *amended by* 897 F.3d 1224 (9th Cir. 2018) ........................... 9

*R.J. Reynolds Tobacco Co. v. Food & Drug Admin.*,
    696 F.3d 1205 (D.C. Cir. 2012), *overruled by*
    *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) .................................. 18

*Reader's Digest Ass'n v. Superior Court*,
    37 Cal. 3d 244 (1984) ................................................................. 16, 19, 20, 23

*Reeder v. Carroll*,
    759 F. Supp. 2d 1064 (N.D. Iowa 2010) ...................................................... 21

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ........................................... 19, 20, 24

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ......................................................................... 8

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ..................................................................................... 19

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*,
    No. 02 CV 2258 JM (AJB), 2007 WL 935703 (S.D. Cal. Mar. 7, 2007) ............ 10

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) .................................................................................. 10

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ..................................................................... 21

*Trans World Accounts, Inc. v. Associated Press*,
    425 F. Supp. 814 (N.D. Cal. 1977) ......................................................... 22, 24

iv

DAVIS WRIGHT TREMAINE LLP

*U.S. ex rel. Klein v. Omeros Corp.*,
  897 F. Supp. 2d 1058 (W.D. Wash. 2012) ..................................................................10

*Vogel v. Felice*,
  127 Cal. App. 4th 1006 (2005) ....................................................................................11

*Wallace v. McCubbin*,
  196 Cal. App. 4th 1169 (2011) ......................................................................................9

*Winter v. DC Comics*,
  30 Cal. 4th 881 (2003) ...................................................................................................9

*Worrell-Payne v. Gannett Co.*,
  49 F. App'x 105 (9th Cir. 2002) ...................................................................................22

**Statutes**

California Civil Code
  § 45 ....................................................................................................................2, 17, 18
  § 45a .........................................................................................................................2, 17

California Code of Civil Procedure
  § 340 ..............................................................................................................................10
  § 425.16 ..................................................................................................................8, 9, 10

**Rules**

Federal Rules of Civil Procedure
  9(g) ................................................................................................................................17
  12(b)(6) ........................................................................................................................8, 9

DAVIS WRIGHT TREMAINE LLP

## INTRODUCTION

CoreCivic, Inc.—one of the largest private prison and detention center operators in the United States—seeks to silence and punish one of its most effective critics by contriving a defamation suit where no claims can lie.  Defendant Morgan Simon, founding partner of Defendant Candide Group LLC, is a life-long activist for social justice who authors and publishes opinion pieces on Forbes.com's contributor platform.  In a series of three posts describing successful efforts by a coalition of activists (including Simon) to encourage banks to stop lending to private prisons, Simon noted how the separation of immigrant families at the border has drawn increased attention to the outsized role played by private prisons—including CoreCivic—in detaining immigrants for profit.  Citing to and relying on specific published reports disclosing CoreCivic's involvement in the development of model legislation criminalizing undocumented immigrants, as well as its donations to lawmakers who sponsored that legislation, Simon also criticized CoreCivic's "lobbying" for harsher criminal and immigration laws.  CoreCivic does not and cannot deny that it operates immigration detention facilities where migrants are housed (some after being separated from family members).  Nor does the Complaint deny that CoreCivic has spent millions in lobbying to secure government appropriations to operate these detention facilities and prisons.  The Complaint also does not deny that CoreCivic was present at a meeting where criminal immigration legislation was developed, or that it donated to state lawmakers who supported that legislation.  Indeed, CoreCivic could hardly contest that harsh criminal and sentencing laws have financially benefitted its business.  Yet CoreCivic insists a false and defamatory meaning should be read into Simon's posts, and attempts to construct such meaning by imposing unsupportable "implications" upon some statements, and subjecting others to hyper-literal constructions.  These contrived claims do not make it past the starting line.

California's anti-SLAPP statute was designed to dismiss lawsuits just like this one.  Because the lawsuit targets the exercise of free speech in a public forum and involving matters of indisputable public interest/public concern, CoreCivic must show a probability of prevailing on the merits of its claims.  It cannot do so.

*First*, CoreCivic has not alleged and will be unable to prove that statements in Defendants'

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

first Forbes post, of September 25, 2018, were published or republished within the one-year limitations period. Mem. § III.A. **Second**, CoreCivic has not alleged that any of Simon's statements concerning family separation were materially false, an essential component of any defamation claim. Moreover, even accepting the unreasonable reading of these statements alleged by CoreCivic, that would still amount to an expression of Simon's opinion, which is not actionable as a matter of law. Mem. § III.B. **Third**, CoreCivic has not alleged that Simon's statements about legal lobbying are actionable. The context and specific language of the statements makes clear that Simon is offering her partisan opinion based on disclosed third party reports, and no reader would subject these statements to the hyper-literal reading CoreCivic presses. Moreover, because it has not pled that it has incurred special damages, CoreCivic must show these statements are defamatory on their face, Cal. Civ. Code §§ 45, 45a. It borders on ridiculous for a publicly traded company whose business model is built upon the incarceration of people for the lowest possible cost—a company whose bottom line is inexorably tied to the number of people under its control at any given time—to claim that a characterization of their legal lobbying activities could somehow damage its reputation. In light of CoreCivic's known and admitted activities, it is simply innocuous, and not actionable as a matter of law, to claim that CoreCivic lobbies in favor of more stringent criminal and immigration laws. Mem. § III.C. **Finally**, CoreCivic—a public figure by virtue of its prominence in the private prison sector—has not plausibly alleged that Simon published the statements at issue with actual malice, *i.e.*, knowing the statements were false or with reckless regard as to whether they were false. Indeed, the Complaint itself alleges that Simon relied on reputable third party sources for her statements concerning lobbying—sources CoreCivic even alleges Simon *should have* relied on—precluding a finding of actual malice as a matter of law. *See* Compl. ¶¶ 81-82; Mem. § III.D.

For these reasons, Simon respectfully asks that the Court dismiss this lawsuit with prejudice and award attorneys' fees, in a motion that will be separately briefed.

## **FACTUAL BACKGROUND**

### A.    The Parties

CoreCivic, formerly known as Corrections Corporation of America (or CCA), is one of the

DAVIS WRIGHT TREMAINE LLP

1  nation's largest operators of private prisons.  Compl. ¶¶ 7, 47, 81.  CoreCivic also operates

2  detention centers that incarcerate immigrants detained by Immigrations and Customs

3  Enforcement.  Ex. 11 at 10.[1]  CoreCivic describes itself as a "government-solutions company" that

4  "solve[s] tough government challenges in cost-effective ways."  Ex. 11 at 1.  In other words,

5  incarcerating people—in prisons, detention facilities, and "reentry facilities," *id.*—traditionally the

6  sole prerogative of government, is CoreCivic's profit-driven business.

7      Simon is a lifelong activist for social justice issues.  *See* Ex. 9.  Through her company,

8  Candide, Simon advises clients on socially responsible means of investment and financial

9  management.  *See* Compl. ¶¶ 14-18; Ex. 10.  Simon is the author of *Real Impact: The Economics

10  of Social Change* (Bold Type Books, 2017).  Compl. ¶ 23 & n.7.  Simon also organizes social

11  justice campaigns, *see* Compl. ¶¶ 14, 108, and has been a key organizer of a grassroots movement

12  against the private prison industry.  *See id.* ¶ 49.  Simon helped spearhead a resoundingly

13  successful public outreach campaign to convince banks and other lenders to stop lending to private

14  prison companies, including CoreCivic.  *Id.* ¶¶ 57; 104-116; Exs. 1-5.

15      Simon is a senior contributor to Forbes.com's contributor platform, where she writes about

16  investing and "building bridges between finance and social justice."  *See* Ex. 1 at 6; Compl. ¶ 24.

17  While she is the sole listed author of her posts at Forbes.com, Simon discloses her association with

18  Candide.  *See, e.g.*, Ex. 1 at 6.

19      **B.      Simon's Forbes Posts**

20      The Complaint takes issue with a series of posts published by Simon on the Forbes

21  contributor platform (collectively, the "Forbes Posts").  These posts are summarized as follows:

22      On September 25, 2018, Simon published a post at Forbes.com entitled "What Do Big

23  Banks Have To Do With Family Detention?  #FamiliesBelongTogether Explains" (the "Sept. 25,

24  2018 Post").  *See* Ex. 1.  The Sept. 25, 2018 Post consists largely of an interview with two

25  members of the Families Belong Together coalition, a group of (then) 85 organizations working

26  "to urge Wells Fargo and JP Morgan Chase to stop financing GEO Group and CoreCivic."  Ex. 1

27  at 2.  In the interview, the coalition members describe how "Families Belong Together emerged in

28

---

[1] Numbered exhibits refer to exhibits to the Declaration of Thomas R. Burke, filed herewith.

3

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

response to the family detention crisis, starting with the recent separation of families at the border which drew national attention to what has been a long-standing issue." *Id*. at 3.  They describe how the coalition has since expanded its work to focus on private prisons more generally, with a focus on the few largest "for-profit prison corporations that hold contracts to operate [immigrant] detention centers, and are profiting off the pain and separation of families," including CoreCivic. *Id*.  The interviewees say that "[o]ur immigration system should not be run like a for-profit incarceration business," and describe their campaign to get major banks to "stop financing" CoreCivic and others.  *Id*. at 5.

On March 5, 2019, Simon published a follow up post at Forbes.com titled "JPMorgan Chase Is Done With Private Prisons" (the "March 5 Post").  *See* Ex. 2.  Stating that "JPMorgan Chase announced early this morning that they will stop financing . . . CoreCivic," and including a hyperlink to the Sept. 25, 2018 Post, *id*. at 2, the post describes how, "[s]ince news of family separation at the southern border began shedding more light on the abuses inside such private facilities, activists across the country have been paying careful attention to who actually enables private prison companies in their day to day operations."  *Id*. at 2.  Per Simon, because "a third of all immigrant detention centers are privately owned," the events at the border spurred a broader movement to pressure banks and investors to stop doing business with private prison and immigrant detention companies.  *Id*. at 2.  The post also calls out CoreCivic specifically, saying that it and its largest competitor "have a long history of profiting from mass incarceration: they make money when beds are filled, justly or unjustly, which is why they've spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws." *Id*. at 2.  Within this passage, hyperlinks directed readers to supporting articles published by NPR and Business Insider, upon which Simon relied.  Compl. ¶¶ 81-82.  The NPR Article reports on the private prison industry's role in the development of an Arizona law requiring the incarceration of anyone who cannot prove their legal immigration status.  Ex. 6 at 3.  It reports that CoreCivic sent representatives to a meeting of the American Legislative Exchange Council ("ALEC"), where the bill was first presented, that it donated to state legislators who co-sponsored the bill, and that it sent a lobbyist to work the state capitol the same week the bill was introduced.  *Id*. at 6-9.  The

DAVIS WRIGHT TREMAINE LLP

4

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

Business Insider Article similarly reports on "efforts" by CoreCivic and other private prison companies "on Capitol Hill and in statehouses across the country to lobby for laws that expand demand for their own services." Ex. 7 at 2. *See also* Burke Decl. ¶¶ 7-8.

On September 30, 2019, Simon published another post at Forbes.com, titled "GEO Group Runs Out of Banks as 100% of Banking Partners Say 'No' to the Private Prison Sector" (the "September 30 Post"). *See* Ex. 3. Simon writes that, "in the wake of demands by grassroots activists — many under the banner of the #FamiliesBelongTogether coalition," nearly all banking partners to major prison companies "have now officially committed to ending ties with the private prison and immigrant detention industry." *Id*. at 1. The post describes the financial consequences of these successful campaigns, and also provides "a brief historical recap" of "the American private prison industry." *Id*. at 2. Again linking to the NPR Article and Business Insider Article, it notes that "[g]iven their business model depends on keeping a consistent and increasing number of people incarcerated, it's been speculated and critiqued that this is why GEO Group and CoreCivic have spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws." *Id*. at 3.

**C.      CoreCivic Takes Issue With the Forbes Posts**

On October 2, 2019, attorneys for CoreCivic sent Simon a letter taking issue with the March 5 Post and September 30 Post. *See* Compl. Ex. E. The letter insisted that "CoreCivic does not lobby for any policies or legislation that would determine the basis for or duration of any individual's incarceration or detention." Id. at 1. The letter also noted that this denial was quoted in the NPR and Business Insider reports, as well as in CoreCivic's federal lobbying disclosures, which are available through several online databases. *Id*. at 1-4. Next, the letter insisted that "CoreCivic does not and has never housed children separated from their parents pursuant to the Trump family separation policy," claiming Simon's references to the Families Belong Together coalition and use of a #FamiliesBelongTogether hashtag implied otherwise. *Id*. at 4.

On October 10, Simon updated the two posts in response to CoreCivic's letter. In the March 5 Post, Simon added a clarification at the bottom stating that "[t]his article does not intend to suggest that CoreCivic . . . housed children separated from their parents pursuant to the Trump

DAVIS WRIGHT TREMAINE LLP

5

family separation policy," and explaining that Simon personally "view[s] the phenomena of family separation as . . . inclusive of separating a grown adult from their aging parent, or spouse from spouse, or a parent being incarcerated while their child remains free, etc." Ex. 4 at 5. In both the March 5 and September 30 Posts, Simon updated the language concerning lobbying to include CoreCivic's denial that it lobbies on criminal or immigration law, as well as additional information concerning CoreCivic's lobbying on bills relating to ICE funding and its membership in ALEC. *See* Ex. 4 ("Updated March 5 Post") at 2; Ex. 5 ("Updated September 30 Post") at 3. Within this text, Simon hyperlinked to several more sources, including the report by the Justice Policy Institute (the "JPI Report")—the same report cited in the Business Insider Article. *See* Ex. 7 at 2. The JPI Report describes how, "[t]hrough campaign contributions, lobbying and building relationships and associations, private prison companies," including CoreCivic specifically, "engage in an aggressive political strategy to influence criminal justice policies," including by "fighting policies that might reduce the use of incarceration." Ex. 8 at 15-16.

On October 29, 2019, CoreCivic wrote Simon another letter claiming Simon had not sufficiently retracted the statements at issue. *See* Compl. Ex. F. Simon did not edit the Forbes Posts any further. Compl. ¶ 68.

### D.    The Complaint

On March 4, 2020, CoreCivic filed this action in the U.S. District Court for the Central District of California. The case was thereafter transferred by consent to the Northern District of California. *See* Dkt. 23. In the Complaint, CoreCivic alleges that Simon, and by extension her firm Candide, defamed it in the Forbes Posts, and in the tweet promoting one of the posts. The Complaint focuses on statements concerning (1) the separation and detention of immigrant families (the "Family Separation Statements"); and (2) Plaintiff's lobbying activities (the "Lobbying Statements"). The Complaint asserts claims for defamation and for defamation by implication based on the same sets of statements. *See* Compl. ¶¶ 120, 135.

#### 1.    *The Family Separation Statements*

CoreCivic contends that in the Family Separation Statements, Simon linked it to the detention of migrant children at the southern U.S. border by, among other things, describing

6

events at the border, noting that CoreCivic operates "detention centers," and referring to the Families Belong Together coalition.  *See* Compl. ¶¶ 47-57.  The Complaint **admits that CoreCivic does operate immigrant detention centers**, Compl. ¶ 7; Ex. 11 at 10, but maintains that it has never "operated any immigration detention facilities **for children** separated from their parents pursuant to the government's family separation policy."  Compl. ¶ 42.  The Complaint does not deny that CoreCivic detains immigrant families, as well as immigrant adults who have been separated from their family members at the border.  *Id.*

The Complaint focuses in particular on one passage from the Sept. 25, 2018 Post, which reads: "The two largest private prison companies," including CoreCivic, "have over $2BN a year in ICE contracts, managing some of the detention centers that have been at the heart of the controversy over the separation of families and incarceration of individuals for crossing the US border."  *See* Ex. 1 at 2; Compl. ¶¶ 48, 66.  It also cites each instance of Simon using the terms "Family Separation" or "Families Belong Together" in the Forbes Posts.  *See* Compl. ¶ 120.  The additional challenged statements are:

- "Families Belong Together emerged in response to the family detention crisis, starting with the recent separation of families at the border which drew national attention to what has been a long- standing issue."  (Sept. 25, 2018 Post)

- "CoreCivic and GEO Group, two large for-profit prison corporations that hold contracts to operate detention centers, and are profiting off the pain and separation of families."  (Sept. 25, 2018 Post)

- Referring to CoreCivic as one of "the largest operators of private prisons and immigrant detention centers in the U.S."  (March 5 Post)

- "Since news of family separation at the southern border began shedding more light on the abuses inside such private facilities, activists across the country have been paying careful attention to who actually enables private prison companies in their day to day operations."  (March 5 Post)

Compl. ¶¶ 120, 135.

In an attempt to avoid the one-year statute of limitations, the Complaint alleges that the Sept. 25, 2018 Post was republished when Simon hyperlinked to it in the March 5 Post, and again when Simon updated the March 5 Post on October 10, 2019.  Compl. ¶ 120(b).  The Complaint also contends the March 5 Post was republished via a March 6, 2019 tweet by Simon, in which she linked to the March 5 Post.  *Id.* ¶ 120(c).

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

### 2.    *The Lobbying Statements*

CoreCivic contends that in the Lobbying Statements, Simon accused it of lobbying to pass harsher criminal sentencing and immigration laws.  CoreCivic maintains that it "has never lobbied for harsher sentences or immigration laws."  Compl. ¶ 75.  The Complaint identifies Simon's statement in the March 5 post that "GEO Group and CoreCivic . . . make money when beds are filled, justly or unjustly, which is why they've spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws," Ex. 2 at 2, as well as her statement in the September 30 Post that:  "Given their business model depends on keeping a consistent and increasing number of people incarcerated, it's been speculated and critiqued that this is why GEO Group and CoreCivic have spent $25M lobbying over the past three decades to push for harsher criminal justice and immigration laws."  Ex. 3 at 2.  The Complaint also takes issue with Simon's clarification edits in both posts.  Ex. 4 at 2; Ex. 5 at 3.  *See also* Compl. ¶¶ 120, 135.

## <u>ARGUMENT</u>

## I.    STANDARD ON A SPECIAL MOTION TO STRIKE

California enacted its "broad" anti-SLAPP law to quickly dispose of meritless claims that target free speech.  *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997); *see also DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015-16 (9th Cir. 2013) ("[i]t would be difficult to find a value of a 'high[er] order' than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute").  Under C.C.P. § 425.16(b)(1), any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  To evoke the anti-SLAPP statute, the moving party first must show the plaintiff's claims arise from protected conduct under the statute.  *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (citation omitted).  Once the defendant makes such a showing, a court must look to the merits of the plaintiff's claims.  *Id.*

When, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and

DAVIS WRIGHT TREMAINE LLP

consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834, *amended by* 897 F.3d 1224 (9th Cir. 2018).  Accordingly, to survive an anti-SLAPP motion challenging the complaint's legal sufficiency, a plaintiff must allege sufficient facts to raise a right to relief above the speculative level—that is, the claim to relief must be plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when its factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Kelsey K. v. NFL Enterprises, LLC*, 254 F. Supp. 3d 1140, 1143 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018) (Alsup, J.).  Although a court must take "well-pleaded factual allegations" as true for purposes of a Rule 12(b)(6) motion, legal conclusions "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

Early dismissal at the pleading stage is especially appropriate in cases like this one, which targets constitutionally protected speech.  *Winter v. DC Comics*, 30 Cal. 4th 881, 892 (2003) ("because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable.") (citation omitted); *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002).

## II.   THE ANTI-SLAPP STATUTE APPLIES TO CORECIVIC'S CLAIMS.

Simon easily meets her burden to show the anti-SLAPP statute applies.  The Complaint's two defamation claims both arise from Simon's free speech made in a "public forum"—Forbes.com's website—concerning an "issue of public interest"—private corporations' reach into taxpayer-funded, traditionally governmental realms of incarceration and immigrant detention, and the human rights abuses that invariably result.  *See* C.C.P. § 425.16(e)(3), (e)(4); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute.") (citations omitted); *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019) (the anti-SLAPP statute applies where, e.g., the defendant "participated in, or furthered, the discourse that makes an issue one of public interest").  CoreCivic challenges multiple statements in its two defamation claims.  The Court must strike any challenged statements that are not actionable as a matter of law.  *Wallace v. McCubbin*, 196 Cal.

App. 4th 1169, 1209 (2011) ("in response to an anti-SLAPP motion . . . a *part* of a cause of action could be struck because the plaintiff failed to establish a probability of prevailing *as to that particular part*") (citing *Taus v. Loftus*, 40 Cal. 4th 683, 742-43 (2007)); C.C.P. § 425.16(b)(1).

### III.   CORECIVIC'S CLAIMS FAIL AS A MATTER OF LAW

### A.   The Sept. 25, 2018 Post Is Outside the Statute of Limitations, and Was Not Republished

The Sept. 25, 2018 Post was published more than a year before the Complaint was filed on March 4, 2020, exceeding California's one-year statute of limitations on libel claims.  *See* Cal. Code Civ. Proc. § 340(c).  The Complaint attempts to skirt the limitations period by alleging that the Sept. 25, 2018 Post was *republished* when it was hyperlinked in the March 5 Post, and again when the March 5 Post was updated.  However, California follows the "single publication rule," pursuant to which the Sept. 25, 2018 Post is deemed published on the date it was first posted. *Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 892 (2007) (citation omitted); *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1133 (9th Cir. 2006) ("application of the single publication rule to the vast majority of Internet publications").  Nearly every court to address the issue has held that a website is not *re*published merely because it is citied or hyperlinked on another site.  *See, e.g.*, *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *7 (S.D. Cal. Mar. 7, 2007) ("providing links to statements already published on the Web, without more . . . does not trigger the republication rule"); *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1074 (W.D. Wash. 2012) ("a mere reference or URL is not a publication of the contents of the materials referred to"); *Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 506 (6th Cir. 2015).  Thus, the challenged statements in the Sept. 25, 2018 Post were not republished by virtue of a mere hyperlink in the March 5 Post.  Nor, pursuant to the same principles, was the Sept. 25, 2018 Post republished via Simon's tweet linking to the March 5 Post. *See* Compl. ¶ 120(c).  This authority applies equally to CoreCivic's claim that Simon's tweet of March 6, 2019 republished the March 5 Post by hyperlinking to it.  CoreCivic's claims based on these publications are time barred, and must be stricken.

### B.   The Family Separation Statements Are Not Actionable

CoreCivic's defamation claims regarding the Family Separation Statements lack the most

10

DAVIS WRIGHT TREMAINE LLP

basic component of such a claim:  a materially false statement of fact.  The Family Separation

Statements are not materially false, and do not convey the allegedly false meaning CoreCivic

insists.  Moreover, even imagining that Simon's statements regarding the private prison industry's

role in immigrant detention somehow, impliedly, indicted the industry as a whole for events that

took place at a few border facilities, that would be a non-actionable expression of Simon's

opinion, not a defamatory implication.

### 1.   *The Family Separation Statements Are Not Materially False*

First, CoreCivic cannot allege the Family Separation Statements are materially false.  In

libel law, "it is not the literal truth or falsity of each word or detail used in a statement which

determines whether or not it is defamatory."  *Issa v. Applegate*, 31 Cal. App. 5th 689, 702 (2019).

"Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the

libelous charge be justified.'"  *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1021 (2005) (quoting

*Masson v. New Yorker Magazine*, 501 U.S. 496, 516-17 (1991)).  The Complaint asserts

repeatedly that CoreCivic has never "operated any immigration detention facilities for children

separated from their parents pursuant to the government's family separation policy."  *See, e.g.*,

Compl. ¶ 42.  But Simon *never said otherwise*.  Rather, the Family Separation Statements more

generally link CoreCivic to a broader movement against private prison operators, as well as to an

overall criticism of incarcerating immigrants and separating families.  Critically, CoreCivic *is* a

private prison company, and *does* incarcerate immigrants.  *See* Compl. ¶ 7; Ex. 11 at 10.  *See also*

Ex. 12 at 16 (disclosing that CoreCivic operates facilities for "individuals being detained by ICE"

and "adults with children who have been detained by ICE").

CoreCivic nevertheless insists that it was "false[]" to "connect[]" CoreCivic "to the

immigrant detention facilities for separated children that were the focus of the Families Belong

Together movement and the resistance to the Trump Administration's family separation policy"

by referring to the Trump family separation policy and Families Belong Together.  Compl. ¶ 47.

First, in making these claims, the Complaint focuses solely on the housing of *minors* separated

from adults, and says nothing about whether CoreCivic houses the *adults* who have been separated

from their minor family members—an essential component of "family separation."  This omission

---

11

DAVIS WRIGHT TREMAINE LLP

speaks volumes.  CoreCivic cannot claim it does not "separate families" by reference to only one half of the equation.  By failing to deny it detains immigrant adults separated from their families, CoreCivic fails to plead that Simon's use of the term "family separation" was materially false.

Moreover, the alleged "implication" CoreCivic advances—namely that it was specifically responsible for the "children in cages" at the border, Compl. ¶¶ 35, 47—requires an untenable leap beyond the content of Simon's statements themselves.  This runs contrary to the California Supreme Court's admonition that courts "must refrain from scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'"  *Forsher v. Bugliosi*, 26 Cal. 3d 792, 803 (1980) (citation omitted).  *Forsher* concerned a book by Vincent Bugliosi, a former deputy district attorney, concerning the Manson Family murder case, which he tried.  The book reported that the plaintiff was seen with a lawyer before the lawyer's murder, and noted the failure of police to investigate the circumstances.  *Id*.  In that case, as in this one, the plaintiff alleged that, though there was "no single statement in the book which, standing alone, could be said to libel" him, the "context" and "cumulative impact" of the book implied he was associated with the Manson Family and had been involved in the murder.  *Id*. at 803-04.  The court rejected the plaintiff's contention, holding that "the fact that some person might, with extra sensitive perception, understand such a meaning cannot compel this court to establish liability at so low a threshold.  Rather, the test … is whether by reasonable implication a defamatory meaning may be found in the communication."  *Id*. at 805-06.

Here, as in *Forsher*, the actual statements at issue do not support the alleged defamatory implication CoreCivic alleges.  Simon's references to Families Belong Together in the Forbes Posts do not "convey to a lay reader" that CoreCivic houses minors separated from their families.  Rather, the Forbes Posts truthfully describe how the Families Belong Together coalition was "galvanized" by the Trump family separation policy, *see* Compl. ¶¶ 36, 43; Ex. 1 at 3 ("Families Belong Together emerged in response to the family detention crisis"), and has since expanded its mandate "to form a corporate accountability committee targeting big banks" that finance the largest private prison companies.  Ex. 2 at 2.  The Forbes Posts also explains *why* events at private detention facilities at the border spurred scrutiny of the entire private prison industry:  Because

12

"while only 10% of prisons and jails nationwide are for-profit, a third of all immigrant detention centers are privately owned… receiving over $1B a year in contracts from ICE." *Id.* None of these statements are alleged to be false, and truthfully describing the evolution of an advocacy movement hardly amounts to a "reasonable implication" of "defamatory meaning."

### 2. *The Family Separation Statements Are Non-Actionable Opinion*

But even accepting—purely for purposes of this motion—that Simon's statements can be read as blaming all private prisons (including CoreCivic) for events that occurred at a few border facilities, a defamation claim would *still* not lie. This kind of broad criticism would amount to a statement of Simon's opinion, which is not actionable as a matter of law. *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009). "Whether an allegedly defamatory statement is one of opinion or fact is a question of law." *Id.* at 986. In examining whether a statement is one of fact or opinion, courts ask "whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Id.* (citation omitted). In making this evaluation, courts consider the "'totality of the circumstances' in which the statement was made," including "the general tenor of the entire work," the "the extent of figurative or hyperbolic language used," and whether the statement is "susceptible of being proved true or false." *Herring Networks, Inc. v. Maddow*, No. 19-cv-1713-BAS-AHG, 2020 WL 2614857, at *3 (S.D. Cal. May 22, 2020). *See also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 24 (1990).

Critically, "[c]ontext can be determinative that a statement is opinion and not fact, for the context of a statement may control whether words were understood in a defamatory sense." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (statements were opinion in light of context, where they appeared in a newspaper opinion column that "create[d] a setting denoting opinion as opposed to fact"). For instance, in *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995)—arising from another book by Vincent Bugliosi about a murder case—the Ninth Circuit considered claims that Bugliosi painted his opposing counsel in the trial as incompetent, thereby defaming him. The court disagreed, and held the statements, though technically factual, were non-actionable opinion. The court noted that "[t]he purpose of the book is to offer the

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

personal viewpoint of the author concerning the trials," and, "[b]ecause the book outlines

Bugliosi's own version of what took place, a reader would expect him to set forth his personal

theories about the facts of the trials and the conduct of those involved in them." *Partington*, 56

F.3d at 1153.  Similarly, in *Herring Networks, Inc.*, 2020 WL 2614857, at *1, the court held it was

protected opinion for Rachel Maddow, in reference to an article about a One America News

reporter also working for a Russian state news outlet, to describe OAN as "really literally . . . paid

Russian propaganda." *Id.*  The court noted that "Maddow made the allegedly defamatory

statement on her own talk show news segment where she is invited and encouraged to share her

opinions with her viewers," and because viewers know that "Maddow does not keep her political

views a secret, . . . audiences could expect her to use subjective language that comports with her

political opinions." *Id.* at *4.

Here, the Forbes Posts are precisely the sort of subjective, partisan publication that readers

would understand to convey Simon's personal views.  Simon's posts promote the Families Belong

Together coalition's efforts, and Simon openly discloses her advocacy to dismantle the private

prison industry.  *See, e.g.*, Ex. 2 at 3.  As in *Partington* and *Herring*, the broad context of the

Forbes Posts indicates to readers that they should be read as conveying Simon's opinions on social

issues, based on the reporting she cites.  To the extent the Forbes Posts contain "implications," any

reader would understand these to be Simon's subjective interpretation, not objective facts.

Indeed, the specific statements CoreCivic focuses upon express figurative concepts, and

are not easily susceptible to objective verification.  In a key challenged statement, Simon writes:

"Since news of family separation at the southern border began shedding more light on

the abuses inside such private facilities, activists across the country have been paying careful

attention to who actually enables private prison companies in their day to day operations." Ex. 2

at 2.  The only "facts" conveyed in this statement are that families have been separated at the

southern border, and that there have been reports of abuse in a number of private prisons—facts

the Complaint does not contest.  The remainder of the statement references a general uproar over

the Trump family separation policy, purports to describe the specific mindset of dozens of activists

and activist groups, then characterizes major bank lenders as "enable[rs]" of private prisons.

14

These conceptual linkages are not expressed as objective fact; rather they employ the charged language of activism.  As part of her advocacy, Simon is rhetorically using the uproar over events at a few border facilities to spur an examination of the entire private prison industry, not offering a statement of objective fact.[2]

### C.    The Lobbying Statements Are Not Actionable

Like the Family Separation Statements, the Lobbying Statements are statements of Simon's opinion made in the context of her explicit social advocacy, which disclose (and hyperlink to) the specific reporting upon which Simon bases her conclusions.  Moreover, Plaintiff has not pled special damages, and cannot demonstrate the Lobbying Statements are defamatory on their face.

### 1.    *The Lobbying Statements Are Opinion*

The Lobbying Statements contain an apparently factual assertion—namely, that CoreCivic and its competitor have together "spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws."  Exs. 2, 3; Compl. ¶¶ 71-72.  However, this does not alone make them actionable.  *Partington* and *Herring* each involved factual statements, but all were held to be non-actionable opinion because of the broader context in which they were made.  As set out above, the "general tenor" of the Forbes Posts is akin to an opinion column by Simon, an activist who is personally involved in a campaign to end private prisons.  *Herring Networks*, 2020 WL 2614857, at *3.  Both the broader rhetoric and specific context of the Lobbying Statements signal that Simon is presenting a one-sided interpretation of the facts.  In the March 5 Post, Simon writes that "CoreCivic [has] a long history of profiting from mass incarceration" and that it makes money from "unjustly" filled beds.  Ex. 2 at 2.  And in the September 30 Post, Simon indicts CoreCivic for having a "business model" that "depends on keeping a consistent and increasing number of people incarcerated," before citing "speculat[ion] and critique[]" of its

---

[2] The Complaint points to Simon's use of the hashtag #FamiliesBelongTogether in a tweet linking to the March 5 Post, Compl. ¶ 54, though this tweet is only identified among the allegedly defamatory statements based on its alleged "republishing" of the March 5 Post.  *Id*. ¶¶ 120, 135.  Even assuming the content of the tweet was also at issue, it would not be actionable.  The use of a hashtag is not a verifiable assertion of fact, and cannot be read as anything more than a "rhetorical statement" that is "normally associated with politics and public discourse in the United States."  *Clifford v. Trump*, 339 F. Supp. 3d 915, 925 (C.D. Cal. 2018) (tweet was non-actionable opinion).

DAVIS WRIGHT TREMAINE LLP

lobbying practices, with hyperlinked citations to the NPR and Business Insider Articles.  Ex. 3 at 2.  This vague and accusatory language is inconsistent with factual statements.

But most critically, the Lobbying Statements are based on disclosed news sources.  Within the statements themselves, Simon hyperlinks to the NPR and Business Insider Articles—which report the $25 million in total lobbying figure, and on efforts by CoreCivic and other private prison companies "in statehouses across the country to lobby for laws that expand demand for their own services," Ex. 7 at 2.  *See also* Ex. 6 at 8-9—underscoring that her statements are interpreting these sources.  *See Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) ("Because the factual referent is disclosed, 'readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts.'") (citation omitted).[3]  To the extent CoreCivic merely takes issue with Simon's use of the term "lobbying" to encompass the legal influence campaigns, strategic political donations, and participation in legislative counsels described in the NPR and Business Insider Articles, that cannot save its claims, because Simon's usage "falls within an acceptable range of literary license."  *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 263-64 (1984).  In sum, the Lobbying Statements would not be understood by readers as statements of sober fact, but as Simon's personal interpretation of disclosed reporting in the NPR and Business Insider Articles.

### 2. *The Lobbying Statements Are Not Defamatory*

Falsity alone is not sufficient to state a libel claim.  "[M]ore is required" – namely, the

---

[3] Indeed, in the Updated March 5 and September 30 Posts, Simon noted CoreCivic's denial that it lobbies on "legislation or policies that would affect the basis for or length of incarceration or detention," and further clarified that her criticism was based on public "[d]isclosures" showing CoreCivic has "lobbied on a number of bills related to funding for ICE enforcement over the years," as well as information in the JPI Report (referenced in the *Business Insider* article) that "both companies have served on task forces of the American Legislative Exchange Council (ALEC), which has written and promoted model legislation focused on mandatory minimum sentences, three strikes laws, and 'truth in sentencing' legislation." Ex. 4 at 2.  The Complaint does not deny any of these facts, but claims the revised passage "falsely conveys to readers that CoreCivic lobbies for harsher criminal sentences," and "accus[es] the company of . . . writ[ing] and promot[ing]" the model legislation Simon described.  Compl. ¶¶ 96-97.  In other words, the Complaint can only find falsity in statements that Simon *did not make*.  But even to the extent the revised passage indicates that Simon *suspects* that CoreCivic has sought to influence criminal and immigration laws, this would still be an expression of Simon's opinion, based on facts reported in the sources she discloses—facts the Complaint does not deny.

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

statement must also be defamatory, and expose the plaintiff to a "reputational injury." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1262 (2017). Under California law, a statement may be found to be defamatory only if it "exposes [plaintiff] to hatred, contempt, ridicule, or obloquy," "causes him to be shunned or avoided," or "has a tendency to injure him in his occupation." Cal. Civ. Code § 45. The Complaint does not plead special damages,[4] thus CoreCivic must demonstrate the statements at issue are libelous "on their face," i.e. "without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." Cal. Civ. Code § 45a; *Forsher*, 26 Cal. 3d at 806.

Libel "on its face"—or libel per se—exists only if "a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense[.]" *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1226 (2017). "The determination as to whether a publication is libelous on its face is one of law, and is to be measured by the effect the publication would have on the mind of the average reader." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998) (holding it was not defamatory per se "to suggest that [plaintiff] was endorsing alcohol," without being aware that plaintiff was a recovering alcoholic – "a textbook example of 'explanatory matter'"). "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385 (1986).

The Lobbying Statements fall far short of meeting the standard for defamation per se. CoreCivic's very business model revolves around monetizing carceral punishment and the indefinite detention of immigrants. *See* Compl. ¶ 7; *see also* Ex. 12 at 39 (disclosing that CoreCivic's "growth" could be "adversely affected by the relaxation of enforcement efforts, the expansion of alternatives to incarceration and detention, leniency in conviction or parole standards and sentencing practices or through the decriminalization of certain activities that are currently proscribed by criminal laws"). Accordingly, CoreCivic has every business incentive to maximize the occupancy of its prisons, immigrant detention centers, and other programs, while providing the

---

[4] Special damages "must be pled and proved precisely." *Gomes v. Fried*, 136 Cal. App. 3d 924, 940 (1982); Fed. R. Civ. P. 9(g) ("[i]f an item of special damage is claimed, it must be specifically stated.") The Complaint does not meet this standard, making only the vague allegation that "Defendants' statements were calculated to—and did in fact—provoke outrage and cause the company reputational and financial damage." Compl. ¶¶ 124, 139.

minimum of comforts and services.  These facts alone may, and perhaps should, "expose" CoreCivic to "hatred" and cause it to be "shunned or avoided," Cal. Civ. Code § 45, yet these facts are not disputed.  Rather, CoreCivic takes issue only with the idea that it would attempt to influence the passage of criminal and immigration legislation through *entirely legal* lobbying activities.  This simply does not rise to the level of defamation per se.  The suggestion that CoreCivic legally lobbies in favor of policies that might improve its bottom line is no worse than saying tobacco companies have fought health warnings on cigarette packs,[5] or that gun companies have lobbied in favor of stand-your-ground laws.[6]  Indeed, a great many in this country support tough-on-crime laws and harsh immigration policies—namely, the legislation CoreCivic insists it does not lobby for or against.  Disagreement on these issues scarcely rises to defamation, rather, it is the natural byproduct of political debate.  *See Corman v. Blanchard*, 211 Cal. App. 2d 126, 134 (1962) ("while the political and economic views attributed to plaintiff may, . . . make him unpopular with certain members of the voting public . . . , they are not of such a character that injury must be presumed from the language itself"); *Harris v. Curtis Publ'g Co.*, 49 Cal. App. 2d 340, 347 (1942) ("We are unable to hold that in commenting upon such a question of public policy the inclusion of a statement attributing to a public official economic views of a sort which were then held and accepted by a large part of our population is, in itself" libelous per se).  In sum, because the Lobbying Statements are not defamatory on their face, and CoreCivic has not pled special damages, the claims based on these statements must be dismissed as a matter of law.

### D.    CoreCivic Has Not Pled and Cannot Plead Actual Malice

CoreCivic has not plausibly alleged that Defendants acted with actual malice, an

---

[5] *R.J. Reynolds Tobacco Co. v. Food & Drug Admin.*, 696 F.3d 1205 (D.C. Cir. 2012), *overruled by Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) (lawsuit in which tobacco companies challenged the FDA's "rule requiring display of new textual warnings and graphic images on cigarette packaging.")

[6] *See* Adam Weinstein, "How the NRA and Its Allies Helped Spread a Radical Gun Law Nationwide," *Mother Jones* (Jun. 7, 2012), https://www.motherjones.com/politics/2012/06/nra-alec-stand-your-ground (reporting how, through ALEC—of which CoreCivic is also a member— the NRA has "pushed Stand Your Ground and other gun laws," funded by tens of millions of lobbying funds donated by "gun manufacturers like Beretta, Remington, and Glock."); Ed Pilkington, "NRA ends silence and comes out fighting for stand-your-ground laws," *The Guardian* (May 2, 2012), https://www.theguardian.com/world/2012/may/02/nra-stand-your-ground-law (reporting on statements by the NRA's lobbying arm in favor of stand-your-ground laws "that it helped draft").

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

independent reason why its claims must be dismissed.  A public figure plaintiff may recover on a defamation claim "only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)—i.e., that "the defendant in fact entertained *serious doubts* as to the truth of his publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added). *See also Reader's Digest*, 37 Cal. 3d at 256.  And, of course, to have actual malice, there must be knowledge or reckless disregard of *falsity*, which cannot be established where the underlying statements are not false.

For a public figure defamation plaintiff to survive a motion to dismiss, it must set out sufficient facts to make a claim of actual malice "plausible on its face," *Twombly*, 550 U.S. at 570, and "the court must 'disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements.'"  *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (citation omitted).  Where a plaintiff does not plead facts sufficient to give rise to a plausible claim of actual malice, a defamation claim may be dismissed at the earliest stage.  *See id.* at 1018-20.  Indeed, such early dismissal of deficient claims serves First Amendment interests. "Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict … breathing space in exactly the manner the actual malice standard was intended to prevent."  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Here, the Complaint *admits* that Simon relied on reputable publications in making the Lobbying Statements—and even alleges she *should have* relied on these sources—and the other allegations relating to actual malice are either conclusory, contradictory, or simply not evidence of actual malice as a matter of law.  CoreCivic cannot plead or begin to prove this essential element.

### 1.   *CoreCivic is a Public Figure*

Preliminarily, CoreCivic cannot contest it is, at minimum, a limited purpose public figure for the purposes of the statement challenged in this action.  Those who have "voluntarily inject[ed]" themselves or have been "drawn into" that controversy may be treated as public figures.  *Reader's Digest*, 37 Cal. 3d at 253-54 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323,

351 (1974)).  In analyzing whether an entity is a limited-purpose public figure, courts consider

whether: (1) there is a public controversy, *i.e.*, where "the issue was being debated publicly and …

had foreseeable and substantial ramifications for nonparticipants"; (2) plaintiff took "some

*voluntary* act through which he seeks to influence the resolution of the public issues involved";

and (3) the alleged defamation was "germane to the plaintiff's participation in the controversy."

*Copp v. Paxton*, 45 Cal. App. 4th 829, 845-46 (1996) (plaintiff was a public figure in his "limited

local efforts to inject himself into" a public debate surrounding earthquake disaster mitigation in

public schools) (quoting *Reader's Digest*, 37 Cal. 3d at 253).  The question of a plaintiff's public

figure status can be determined at the pleading stage where the Complaint's "own allegations"

demonstrate these factors are satisfied.  *See Resolute Forest Prods.,* 302 F. Supp. 3d at 1017.

First, the role of private corporations in imprisoning convicts and detaining immigrants is

indisputably a matter of public controversy, not in the least because these functions are entirely

taxpayer funded.  Taxpayer funded public projects have been held to be matters of public

controversy.  *See, e.g.*, *Carr v. Forbes, Inc.*, 259 F.3d 273, 279 (4th Cir. 2001) (noting that

"[p]ublic projects, by definition, exist for the public at large," and holding a developer was a

public figure for purposes of an article concerning a public works project he developed);

*McDowell v. Paiewonsky*, 769 F.2d 942, 950 (3d Cir. 1985) (architect for a large public project

was a limited purpose public figure because the project "almost inevitably put him into the vortex

of a public controversy").  The treatment of prisoners has also been held to raise issues of "grave

public concern."  *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 294 (4th Cir. 2008) (finding

private provider of interrogation services at Abu Ghraib prison was a public figure).

CoreCivic is one of the largest operators of prisons and detention in the country, *see*

Compl. ¶ 47, and "surely knew" that this business model would "potentially expose it[] to the

inhospitable climate of media criticism." *CACI*, 536 F.3d at 295.  Indeed, CoreCivic admits that it

has levied its position of prominence to lobby on issues of public policy. Compl. ¶ 7. By its own

conduct and admission, CoreCivic has voluntarily inserted itself into a field of "grave public

concern," and has sought to influence policy in that field.  Finally, because the Forbes Posts relate

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

directly to CoreCivic's role as an operator of private prisons and immigrant detention centers, the last factor is satisfied.  CoreCivic is a public figure for purposes of the Forbes Posts.

### 2. *CoreCivic Does Not Plausibly Allege, and Cannot Show, Actual Malice*

The Complaint attempts to raise an inference of actual malice by alleging the following: (1) Defendants had a financial motivation for publishing statements critical of CoreCivic because they hoped that after divesting from CoreCivic, investors would "redirect[]" capital to Candide's financial "products" (Compl. ¶¶ 46-48); (2) CoreCivic has a statement on its website denying it houses "unaccompanied minors" (*id*. ¶ 58); (3) Defendants had read CoreCivic's denials relating to the Lobbying Statements in the NPR Article and Business Insider Article, as well as on other websites (*id*. ¶¶ 81-83, 86-90); (4) Defendants did not reach out to CoreCivic for comment (*id*. ¶¶ 61, 91); and (5) Defendants' updates to the March 5 Post and September 30 Post did not satisfy CoreCivic, including because they did not remove the hyperlink to the Sept. 25, 2018 Post (*id*. ¶¶ 62-68; 92-103).  None of these allegations are sufficient to plead actual malice.

*First*, CoreCivic's attenuated theory that Defendants hoped to financially benefit from the loss to CoreCivic's business is implausible on its face.  It presumes, without justification, that an investor who decided to divest itself from CoreCivic because of bad publicity would somehow automatically redirect its assets toward Simon.  To credit this theory would in effect nullify the actual malice pleading requirement, and allow not just CoreCivic, but any business Simon has criticized to sue her on the same theory of "redirected capital," merely because she is a financial advisor.  *See also Reeder v. Carroll*, 759 F. Supp. 2d 1064, 1089–90 (N.D. Iowa 2010) (claim by plaintiff that a doctor wrote letters critical of his medical work because that doctor had a "financial interest" in his own competing hospital's success, were "insufficient to support a finding" of actual malice.)  Moreover, the allegations do not explain why a financial interest in criticizing CoreCivic would equate to a motivation *to lie*.  *See Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) (a motivation to publish sensational or negative stories was insufficient to show actual malice, where there was no evidence of a specific motivation to lie or disregard the truth).  CoreCivic's theory of expected indirect benefit as evidence of actual malice should be rejected.

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

*Second*, CoreCivic's allegations that Simon knew of its denials and that she did not reach out for comment do not support actual malice. Denials by the subject of a negative article do not raise an inference of actual malice, *Worrell-Payne v. Gannett Co.,* 49 F. App'x 105, 108 (9th Cir. 2002) (Defendants' knowledge that plaintiff made "statements [] in her own defense at a press conference" and distributed packet of "corrective information" did not support a finding of actual malice), nor does Simon's failure to reach out for comment. *DARE America v. Rolling Stone Magazine*, 101 F. Supp.2d 1270, 1284 n.3 (C.D. Cal. 2000) ("Plaintiff's suggestion that Defendants' failure to contact [plaintiff] before publishing [the] article evidences actual malice is ... legally misguided. Defendants were not required to contact the subjects of the article before publication"), *aff'd*, 270 F.3d 793 (9th Cir. 2001).

*Third*, CoreCivic cannot allege actual malice as to the Family Separation statements because actual malice requires knowledge of falsity, and the statements *are not false*. *See* Section II.B.1, *supra*. The Complaint nevertheless alleges that Simon knew the statements would be *understood* as false, as demonstrated by Simon's clarification to the March 5 Post. The Complaint glosses over the fact that Simon's clarification (made eight days after CoreCivic's correction request, *see* Compl. ¶¶ 62, 65) opens with "***This article does not intend to suggest that CoreCivic . . . housed children separated from their parents pursuant to the Trump family separation policy***." Ex. 4 at 5. This statement goes to the heart of CoreCivic's concern, and demonstrates Simon's desire that her truthful statements be understood correctly. *See Trans World Accounts, Inc*. v. *Associated Press*, 425 F. Supp. 814, 823, n.6 (N.D. Cal. 1977) (publication of a corrective story "only nine days after publication of the erroneous story" would "create a large obstacle to plaintiff's efforts to prove actual malice."). That Simon's clarification apparently did not satisfy CoreCivic also does not, as a matter of law, constitute evidence of actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) (failure to retract upon demand is "not adequate evidence of malice for constitutional purposes"); *D.A.R.E*, 101 F. Supp. 2d at 1287 ("If a publisher's wholesale refusal to retract . . . did not constitute actual malice, it follows that a publisher's retraction which does not satisfy the aggrieved party surely is not actionable.").

DAVIS WRIGHT TREMAINE LLP

22

1    Finally, and most critically, CoreCivic's allegations not only fail to raise an inference of

2    actual malice, they in fact *preclude* any such a determination with regard to the Lobbying

3    Statements.  This is because the Complaint admits that Simon relied on the NPR Article and

4    Business Insider Article in making the statements—and even faults her for *not* crediting

5    statements in these articles (namely, CoreCivic's own denials).  *See* Compl. ¶¶ 80-82.  Under

6    settled law, "[g]ood faith reliance on previously published reports in reputable sources . . .

7    precludes a finding of actual malice."  *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287,

8    1297 (D.C. Cir. 1988); *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) ("One who

9    repeats what he hears from a reputable news source, with no individualized reason external to the

10   news report to doubt its accuracy, has not acted recklessly."); *Reader's Digest*, 37 Cal. 3d at 259

11   ("Where the publication comes from a known reliable source and there is nothing in the

12   circumstances to suggest inaccuracy, there is no duty to investigate") (citations omitted).

13   CoreCivic relies on the NPR and Business Insider Articles as proof that it never lobbied in

14   favor of criminal or immigration law, *see* Compl. ¶¶ 80-82, but again, it quotes only its *very own*

15   *denials* within the articles, and suggests misleadingly that the articles reported these denials as

16   fact.  To the contrary, the two articles paint a damning picture of efforts by CoreCivic to influence

17   criminal and immigration legislation through participation in the legislative counsel ALEC,

18   strategic donations to politicians, and state-level lobbying.  *See* Exs. 6-7; Burke Decl. ¶¶ 7-8.  The

19   Business Insider Article reports that, notwithstanding CoreCivic's denials, the JPI Report

20   documented "several pieces of federal legislation the [CoreCivic] lobbied on in recent years,

21   including funding related to private prisons and Immigrations and Customs Enforcement (ICE)

22   detention."  Ex. 7 at 2.  The NPR Article also notes how CoreCivic "hired a powerful new lobbyist

23   to work the [Arizona] capitol" the "same week" a controversial law criminalizing illegal

24   immigrants "hit the Arizona statehouse floor."  Ex. 6 at 8.  Finally, even assuming Simon's

25   statements were not perfectly accurate in summarizing the thrust of these articles, this also cannot

26   be evidence of actual malice.  *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485,

27   512–13 (1984) (where "adoption of the language chosen was 'one of a number of possible rational

28   interpretations' of an event 'that bristled with ambiguities'" . . . "[t]he choice of such language,

23

though reflecting a misconception, does not place the speech beyond the outer limits of the First Amendment's broad protective umbrella"). As a matter of law, it was entirely reasonable, and indeed inconsistent with any inference of actual malice, for Simon to rely on the NPR and Business Insider Articles to come to the conclusion that CoreCivic "lobb[ies] . . . to push for harsher criminal justice and immigration laws." Ex. 2 at 2; Ex. 3 at 2.

In fact, after receiving CoreCivic's letter demanding a retraction, Simon updated both posts to clarify that CoreCivic "say[s] that [it doesn't] lobby on legislation or policies that would affect the basis for or length of incarceration or detention," and cited specific additional sources. *See* Ex. 4 at 2, Ex. 5 at 3 (each noting that, "according to the Justice Policy Institute," CoreCivic has "served on task forces of the American Legislative Exchange Council (ALEC), which has written and promoted model legislation focused on mandatory minimum sentences, three strikes laws, and 'truth in sentencing' legislation" and has "lobbied on a number of bills related to funding for ICE enforcement over the years."). *See also* Compl. ¶ 95. Simon also linked to an OpenSecrets.org lobbying database and the JPI Report, which shows that in 2019 CoreCivic lobbied on several bills relating to the Department of Homeland Security. Ex. 8 at 23; Burke Decl. ¶ 9. *See also* Compl. ¶ 89 n. 31 (citing the OpenSecrets.org report). In short, the Complaint demonstrates Simon's reliance on, and citation to, reliable sources, as well as her willingness to promptly update her statements to be more precise. These acts are utterly inconsistent with any claim of actual malice. *See Resolute Forest Prods.*, 302 F. Supp. 3d at 1019 (holding that where the defendant retracted allegedly inaccurate statement based upon "faked" source material, "[t]he plausible inference from this allegation is that Greenpeace made a mistake, not that it acted with malice," and dismissing claims for failure to plead actual malice); *Trans World Accounts*, 425 F. Supp. at 823, n.6.

Because CoreCivic has not plausibly alleged any facts that support its claim of actual malice as to the Lobbying Statements—or indeed as to any of the statements at issue—the Complaint may be dismissed on this basis alone.

## **CONCLUSION**

For all the reasons set forth above, the Court should strike the Complaint in full, and award Simon her attorney's fees and costs, in motion that will be filed later.

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

1   Dated:  August 6, 2020                    Respectfully submitted,

2                                             DAVIS WRIGHT TREMAINE LLP
                                              THOMAS R. BURKE
3                                             ABIGAIL B. EVERDELL

4

5                                             By:   /s/ Thomas R. Burke
                                                   THOMAS R. BURKE

6                                             Attorneys for Defendants Candide Group, LLC and
                                              Morgan Simon
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SPECIAL MOTION TO STRIKE
4:20-cv-03792-WHA