1   Thomas R. Burke (State Bar No. 141930)
    DAVIS WRIGHT TREMAINE LLP
2   505 Montgomery Street, Suite 800
    San Francisco, California  94111
3   Telephone:  (415) 276-6500
    Facsimile:  (415) 276-6599
4   Email: thomasburke@dwt.com

5   Abigail B. Everdell (*pro hac vice*)
    DAVIS WRIGHT TREMAINE LLP
6   1251 Avenue of the Americas, 21st Floor
    New York, New York  10020
7   Telephone:  (212) 489-8230
    Facsimile:  (212) 489-8340
8   Email:   abigaileverdell@dwt.com

9   Attorneys for Defendants
    Candide Group, LLC and Morgan Simon

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14  CORECIVIC, INC.,                    Case No. 4:20-cv-03792-WHA

15              Plaintiff,              Assigned to the Hon. William Alsup

16  v.                                  **REPLY IN SUPPORT OF SPECIAL
                                        MOTION TO STRIKE PLAINTIFF'S
17  CANDIDE GROUP, LLC and MORGAN       COMPLAINT**
    SIMON,
18                                      [Cal. Code Civ. Proc. § 425.16]
                Defendants.
19                                      Judge:     Hon. William Alsup
                                        Date:      October 22, 2020[1]
20                                      Time:      8:00 a.m.
                                        Location:  San Francisco Courthouse
21                                                 Courtroom 7 – 19th Floor
                                                   450 Golden Gate Avenue
22                                                 San Francisco, CA  94102

23                                      Action Filed:        March 4, 2020
                                        Action Transferred:  June 7, 2020
24

25

26

27  ─────────────────────
    [1] Defendants respectfully request oral argument on this motion, and in that event, pursuant to this
28  Court's Supplemental Order to Order Setting Initial Case Management Conference (Rev. Feb. 12,
    2018), ¶ 3, sixth year associate Abigail Everdell will argue the motion.

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

I.     The anti-SLAPP Statute Applies to This Action ................................................................ 2

       A.     In the Ninth Circuit, the Anti-SLAPP Statute Applies in Federal Court ................. 2

       B.     The Forbes Posts Do Not Fall Within the Commercial Speech Exemption ............. 2

II.    Corecivic's Claims Fail as a Matter of Law ...................................................................... 5

       A.     CoreCivic's Claims Arising From Statements in the Sept. 25, 2018 Post Are Time-
              Barred, and Its Other Allegations of Republication Fail .......................................... 5

       B.     The Family Separation Statements Are Not False, and Do Not Carry the Allegedly
              "False" Implications CoreCivic Puts Forth .............................................................. 7

       C.     The Forbes Posts Are Akin to Opinion Columns and Should Not Be Subjected to
              an Over-Literal Reading ........................................................................................... 8

       D.     CoreCivic Has Not Met the Pleading Standard for Special Damages, and Concedes
              That the Lobbying Statements Are Not Defamation Per Se .................................... 10

III.   The Complaint Fails to Raise a Plausible Inference of Actual Malice ............................. 12

CONCLUSION ............................................................................................................................ 15

DAVIS WRIGHT TREMAINE LLP

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anderson v. Hearst Pub. Co.*,
   120 F. Supp. 850 (S.D. Cal. 1954) ...................................................................................11

5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................12

6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................12

7

8

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and
   *aff'd*, 622 F. App'x 67 (2d Cir. 2015) ...........................................................................15

9

10

*Cochran v. NYP Holdings, Inc.*,
   58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000) .....................8, 10

11

12

*Connaughton v. Harte Hanks Commc'ns, Inc.*,
   842 F.2d 825 (6th Cir. 1988), *aff'd*, 491 U.S. 657 (1989) ..........................................14

13

*D.A.R.E Am. v. Rolling Stone Magazine*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) ...........................14

14

15

*Doctor's Data, Inc. v. Barrett*,
   170 F. Supp. 3d 1087 (N.D. Ill. 2016) ............................................................................5

16

17

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ..........................................................................................11

18

*Eastwood v. Nat'l Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997) ..................................................................................13, 14

19

20

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
   194 F. Supp. 3d 263 (S.D.N.Y. 2016) ..............................................................................6

21

22

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019).........................................................................................................3

23

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002)...........................................................................................9

24

25

*Forsher v. Bugliosi*,
   26 Cal. 3d 792 (1980)........................................................................................................7

26

27

*GOLO, LLC v. Higher Health Network, LLC*,
   No. 3:18-CIV-2434-GPC-MSB, 2019 WL 446251 (S.D. Cal. Feb. 5, 2019) ...........................11

28

DAVIS WRIGHT TREMAINE LLP

ii

DAVIS WRIGHT TREMAINE LLP

*Harris v. City of Seattle*,
   152 F. App'x 565 (9th Cir. 2005) ...................................................................................14

*Henry v. Collins*,
   380 U.S. 356 (1965) ......................................................................................................13

*Herring Networks, Inc. v. Maddow*,
   445 F. Supp. 3d 1042 (S.D. Cal. 2020),
   *appeal filed*, No. 20-55579 (9th Cir. June 3, 2020), ...........................................9, 10

*In re Philadelphia Newspapers, LLC*,
   690 F.3d 161 (3d Cir. 2012), *as corrected* (Oct. 25, 2012) ....................................5, 6

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ........................................................................................4

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*,
   12 F. Supp. 2d 1035 (C.D. Cal. 1998) ...........................................................................11

*Kaelin v. Globe Commc'ns Corp.*,
   162 F.3d 1036 (9th Cir. 1998) .......................................................................................13

*Major v. Silna*,
   134 Cal. App. 4th 1485 (2005) ........................................................................................4

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ......................................................................................................12

*McFarlane v. Sheridan Square Press, Inc.*,
   91 F.3d 1501 (D.C. Cir. 1996) .......................................................................................15

*McKinney v. Cty. of Santa Clara*,
   110 Cal. App. 3d 787 (1980) ...........................................................................................7

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ...........................................................................3

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) .....................................................................................9, 10

*Penrose Hill, Ltd. v. Mabray*,
   No. 20-CIV-01169-DMR, 2020 WL 4804965 (N.D. Cal. Aug. 18, 2020) .....................6

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828, *amended by* 897 F.3d 1224 (9th Cir. 2018) ..........................................2

*Pollard v. Lyon*,
   91 U.S. 225 (1875) ........................................................................................................11

*Rice v. McKesson Corp.*,
   No. CIV 12-05949 WHA, 2013 WL 97738 (N.D. Cal. Jan. 7, 2013) .............................2

iii

*Salyer v. S. Poverty Law Ctr., Inc.*,
 701 F. Supp. 2d 912 (W.D. Ky. 2009) ........................................................................5

*Shepard v. TheHuffingtonPost.com, Inc.*,
 No. CIV 12-1513 PAM/SER, 2012 WL 5584615 (D. Minn. Nov. 15, 2012),
 *aff'd*, 509 F. App'x 556 (8th Cir. 2013) ...................................................................5

*Simpson Strong-Tie Co. v. Gore*,
 49 Cal. 4th 12 (2010).................................................................................................3

*Solano v. Playgirl, Inc.*,
 292 F.3d 1078 (9th Cir. 2002)..................................................................................13

*Steam Press Holdings, Inc. v. Haw. Teamsters, Allied Workers Union, Local 996*,
 302 F.3d 998 (9th Cir. 2002)......................................................................................9

*Stutzman v. Armstrong*,
 No. 2:13-CIV-00116-MCE, 2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ..............4

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
 330 F.3d 1110 (9th Cir. 2003)..................................................................................13

*Tavoulareas v. Piro*,
 817 F.2d 762 (D.C. Cir. 1987) .............................................................................13, 15

*Yeager v. Bowlin*,
 693 F.3d 1076 (9th Cir. 2012)....................................................................................5

**Statutes**

California Code of Civil Procedure
 § 425.17 ...............................................................................................................3, 4, 5

**Rules**

Federal Rules of Civil Procedure
 9(g) ...........................................................................................................................11
 12(b)(6).............................................................................................................2, 3, 12

DAVIS WRIGHT TREMAINE LLP

iv

**INTRODUCTION**

In Opposing Defendants' Special Motion to Strike, CoreCivic attempts repeatedly and shamelessly to have it both ways, no matter the contradiction.  In August, CoreCivic insisted that the anti-SLAPP statute must be applied in federal court to its last detail (Dkt. 43), yet in its Opposition now claims the statute should not apply at all.  Next, the Opposition characterizes the challenged Forbes Posts[2]—which reflect Simon's earnest activism against private prisons—as nakedly commercial, but later insists that they can only reasonably be read as dry factual reporting.  Then, the Opposition insists Simon's Family Separation Statements are literally, provably false, but its "quotes" of the so-called false statements appear nowhere in the Forbes Posts, and bear little relationship to Simon's actual statements.  Finally, CoreCivic bases its claim of actual malice as to the Lobbying Statements on an allegation that Simon had read and should have relied upon quotes by CoreCivic in the NPR and Business Insider Articles, but then declares that Simon's awareness of other reporting in these *exact same articles* cannot be accepted without discovery.  All this fancy footwork cannot save CoreCivic's claims.  Instead, it lays them bare.  CoreCivic's own allegations fail to meet basic pleading standards for defamation, and fail to raise a plausible inference of actual malice.  This Court need not look past the Complaint and the materials incorporated therein to dispose of CoreCivic's Complaint in its entirety.

*First*, the anti-SLAPP statute applies in this Court, under binding Ninth Circuit authority.  CoreCivic's arguments to the contrary rely on non-governing caselaw and an overt mischaracterization of the Forbes Posts and the statute's commercial speech exemption.  The commercial speech exemption applies only to *comparative advertising*, and no amount of convenient characterization can force the Forbes Posts into that category.  *Second*, the Opposition's claim that the Sept. 25, 2018 Article was republished by virtue of a hyperlink goes against clear authority that a hyperlink can only republish material that it *repeats*.  *Third*, the Opposition concedes that the Family Separation Statements are not actually false, but insists they carry outlandish false "implications" that bear no rational relationship to Simon's actual

---

[2] Except as otherwise indicated, defined terms are as set out in Defendants' Memorandum of Law in Support of their Motion to Strike ("Mot. Br."), and referenced exhibits refer to exhibits filed with the Burke Declaration in support of that motion (Dkts. 41-2 – 41-13).

DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
Case No. 4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

statements.  This is not sufficient to plead falsity.  **Fourth**, though CoreCivic would have them treated as advertisements one moment, and hardboiled reporting the next, the Forbes Posts are plainly akin to opinion columns reflecting Simon's own activism against private prisons.  In light of this context, any reasonable unstated implications in the Forbes Posts can only be read as Simon's opinion, and her use of loose verbiage to summarize disclosed reporting cannot rise to the level of an actionable false statement.  **Fifth**, the Opposition concedes that the Lobbying Statements are not defamatory per se, and since the Complaint fails to plead a plausible theory of special damages, these claims fail as a matter of law.  **Finally**, CoreCivic fails to plead facts that support a plausible inference of actual malice—whether examined individually or cumulatively.

## I.     THE ANTI-SLAPP STATUTE APPLIES TO THIS ACTION

### A.     In the Ninth Circuit, the Anti-SLAPP Statute Applies in Federal Court

CoreCivic's Opposition claims that the anti-SLAPP statute "cannot apply in Federal Court" because it conflicts with the Federal Rules of Civil Procedure.  Opp. at 6.  This is a stunning about-face from CoreCivic's previous position, asserted in its Administrative Motion of August 11, 2020, that the anti-SLAPP statute *must* apply in Federal Court down to its specific procedural deadlines.  (Dkt. 43 at 2; *see also* Dkt. 46 (Order Denying Administrative Motion)).  Yet even putting that aside, CoreCivic's arguments are purely academic.  This Court is bound by decisions of the Ninth Circuit Court of Appeals (not the Fifth or the Second).  *See, e.g.*, *Rice v. McKesson Corp.*, No. C 12-05949 WHA, 2013 WL 97738, at *2 (N.D. Cal. Jan. 7, 2013) (Alsup, J.) ("[R]eliance on the Seventh Circuit's reasoning . . . is misplaced.  Courts in this district are bound by the authority of our own court of appeals.").  Here, binding Ninth Circuit authority settles the question:  Anti-SLAPP motions can be filed in Federal Court, and where (as here) such a motion challenges the legal sufficiency of the claims, it will be examined under Rule 12(b)(6) standards.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834, *amended by* 897 F.3d 1224 (9th Cir. 2018).

### B.     The Forbes Posts Do Not Fall Within the Commercial Speech Exemption

In its Opposition, CoreCivic argues, incredibly, that Simon's statements in the Forbes Posts "fall[] squarely within the Anti-SLAPP Act's 'commercial speech' exemption." set out in

2

Cal. Civ. Proc. Code. § 425.17(c).  Opp. at 7.  Hiding behind Rule 12(b)(6), CoreCivic claims that Simon meant to personally profit from criticizing CoreCivic and touting the progress of bank financing-focused activism against the private prison industry.  But this theory (aside from being categorically false) cannot implicate the statutory exemption unless CoreCivic's cause of action "aris[es] from" Defendants' representations about their own "or a business competitor's business operations, goods, or services." *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010).  *See also FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019) ("425.17, subdivision (c) ... exempts 'only a subset of commercial speech'—specifically, comparative advertising").  Defendants are a "financial advisor" and her "Investment Advisor" firm.  Compl. ¶¶ 8-9.  The Complaint does not allege they operate prisons or provide government "services," *id*. ¶ 7, nor does it allege they extend loans to large corporations or take consumer deposits like the banks referred to in the Forbes Posts (and any such allegation would be false).  Defendants cannot be defined as a "business competitor" of CoreCivic, or of a lending bank,[3] solely because Defendants advise on (or supposedly "sell") investments.  Using this definition would make *every* investment advisor or brokerage a "business competitor" with every publicly traded company and/or lending institution, regardless of any actual overlap in products or services.

Finally, the Forbes Posts do not make any representations about Defendants' services or any "products" Candide supposedly sells.  In *Simpson Strong-Tie*—binding authority on the commercial speech exemption, which the Opposition tellingly fails to mention—the California Supreme Court found the exemption did not apply to an advertisement by an attorney that implied the plaintiff's galvanized screws were defective.  49 Cal. 4th at 30.  The parties were obviously not competitors, and though "the purpose of the advertisement was to promote [the defendant's] legal services," the exemption did not apply because the claims did not "aris[e] from ... representations of fact about [defendant's own] ... business operations, goods, or services." *Id*. (emphasis added).

---

[3] CoreCivic raises this claim that Defendants are "competitors" with major lending banks for the first time in Opposition.  Aside from being facially ridiculous, the theory fails because it finds no support in the Complaint. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1104, 1116 (C.D. Cal. 2004) (parties could not be "business competitors" for purposes of the commercial speech exemption, where there was "no allegation in the complaint that" they were, and the complaint in fact "makes clear that the parties are engaged in separate and distinct businesses.").

DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
Case No. 4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

Thus, even accepting the absurd proposition that the Forbes Posts constituted advertising for Defendants, they do not qualify for the exemption because none of CoreCivic's claims "aris[e] from representations" about *Defendants'* services (or about a business competitor's).

But worse, CoreCivic's argument misreads the statutory language of the "exception" to the statute's commercial speech exemption in Cal. Civ. Proc. Code § 425.17(d)(2), which explicitly states that the commercial speech exemption does *not* apply to "[a]ny action against any person or entity based upon the creation[ or] dissemination ... of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation." *Id*. The Forbes Posts are without question literary and/or political "works" under this definition, akin to "an article published in a newspaper or magazine." Indeed, CoreCivic repeatedly notes the statements were published in "articles on the 'Investing' section of Forbes.com," Opp. at 1, 3, 7, 16, and contends that "the general tenor of Defendants' publications is factual and historical," *id*. at 16—a far cry from the kind of comparative advertising statements contemplated by the commercial speech exemption.

The Opposition nevertheless claims that subsection (d)(2) does not apply to the Forbes Posts, because the website "Forbes.com is not a 'newspaper or magazine,'" and the legislature's failure to include websites in the examples of "works" under subsection (d)(2) indicates it intended to exclude them. Opp. at 10. This is a blatant misstatement of the law. Subsection (d)(2)'s examples are explicitly *non-exclusive*, preceded by the phrase "***including, but not limited to***"—a phrase that CoreCivic omits. *Id*.; Cal. Civ. Proc. Code § 425.17(d)(2). This phrase "is a term of enlargement, and signals the Legislature's intent that subdivision (d)(2) applies to items not specifically listed in the provision." *Stutzman v. Armstrong*, No. 2:13-CIV-00116-MCE, 2013 WL 4853333, at *11 (E.D. Cal. Sept. 10, 2013) (citation omitted). Indeed, numerous courts have applied this exception to works not specifically enumerated in the statute. *See, e.g.*, *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1068 (2005) (radio talk show was a "work" under (d)(2)); *Major v. Silna*, 134 Cal. App. 4th 1485, 1495 (2005) (finding no "material distinction" between a political advocacy letter sent by mail and a newspaper or magazine "article or editorial of similar length and content"). If radio shows and political letters are "works" within

*DAVIS WRIGHT TREMAINE LLP*

4

1   subsection (d)(2), it certainly follows that a contributor post published "on the 'Investing section'"

2   of a renowned news organization's website, Opp. at 10, must also fall under the exemption.

3           In sum, the commercial speech exemption cannot apply to exclude the statements at issue

4   from the scope of the anti-SLAPP statute.  CoreCivic does not dispute, and therefore concedes,

5   that the Forbes Posts otherwise fall within prong one of the anti-SLAPP statute, thus the Court can

6   proceed to prong two, and strike CoreCivic's legally deficient claims.

## II.     CORECIVIC'S CLAIMS FAIL AS A MATTER OF LAW

**A.     CoreCivic's Claims Arising From Statements in the Sept. 25, 2018 Post Are Time-Barred, and Its Other Allegations of Republication Fail**

10          CoreCivic admits that the Sept. 25, 2018 Post was published outside the limitations period,

11  yet contends that it was republished by virtue of a hyperlink in the March 5 Post.  Opp. at 10-11.

12  In the face of a mountain of authority that a hyperlink to an outside source does not effect a

13  republication, *see* Mot. Br. at 10.[4]  CoreCivic argues that a web publication can be republished

14  where a later hyperlink "substantively ... add[s] to it **_or_** direct[s] [it] to a new audience."  Opp. at

15  11 (quoting *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012)).  Yet, CoreCivic fails to

16  mention that the *Yeager* standard examines whether a web publication is republished when

17  changes are made to the *original* publication.  *See id.* ("under California law, a statement on a

18  website is not republished unless **_the statement itself_** is substantively altered or added to, or the

19  website is directed to a new audience") (emphasis added).  *See also Salyer*, 701 F. Supp. 2d at 917

20  ("the critical feature of republication is, again, that the *original text of the article was changed* or

21  the contents of the article presented directly to a new audience") (emphasis added).

22          The Complaint does not allege (nor could it) that the Sept. 25, 2018 Post was changed at

23  all within the limitations period—much less "substantively altered or added to."  *Yeager*, 693 F.3d

24  _____

25  [4] *See also, e.g.*, *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174-75 (3d Cir. 2012), *as corrected* (Oct. 25, 2012) (noting that "[s]everal courts specifically have considered whether linking to previously published material is republication. To date, they all hold that it is not");

26  *Salyer v. S. Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 916 (W.D. Ky. 2009) (because hyperlink did not republish the "material, in its entirety," it did not constitute republication); *Doctor's Data,*

27  *Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016) ("a hyperlink does not qualify as a publication."); *Shepard v. TheHuffingtonPost.com, Inc.*, No. CIV. 12-1513 PAM/SER, 2012 WL

28  5584615, at *2 (D. Minn. Nov. 15, 2012) ("hyperlinks to the original article . . . do not restart the statute of limitations."), *aff'd*, 509 F. App'x 556 (8th Cir. 2013).

DAVIS WRIGHT TREMAINE LLP

at 1082.  Moreover, as CoreCivic admits, the "directed to a new audience" standard cannot be met by a mere hyperlink and/or reference to the web publication.  Opp. at 11.  *See also In re Philadelphia Newspapers*, 690 F.3d at 175 ("though a link and reference may bring readers' attention to the existence of an article, they do not republish the article").  Courts applying the "new audience" standard have held that a republication via hyperlink can occur where the newer publication's reference to the earlier publication not only links to but *repeats* the allegedly defamatory statements in that earlier publication.  *See, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 278 (S.D.N.Y. 2016) (republication may have occurred where a reference and link to the earlier post "restate[d], almost verbatim, allegedly defamatory statements from [it].").  The recent Northern District of California decision *Penrose Hill, Ltd. v. Mabray*, No. 20-CIV-01169-DMR, 2020 WL 4804965, at *8 (N.D. Cal. Aug. 18, 2020) is illustrative.  On a motion on the pleadings—i.e. *as a matter of law*—the Court held that a tweet linking to an earlier blog post "[a]t most . . . constitutes a republication as to the statements displayed in the [tweet's] link preview and not the rest of the statements in the Blog Post."  *Id.* at *8.  In other words, even where a reference and link to a time-barred web publication meets the republication standard, it only does so with regard to statements the later publication repeats.

Here, the only allegedly defamatory statements in the Sept. 25, 2018 Post relate to family separation.  *See* Compl. ¶¶ 120(b), 135(a).  But in the sentence that links to the Sept. 25, 2018 post, the March 5 Post makes no reference to family separation.  *See* Ex. 2 at 2 ("As explored in '<u>What Do Big Banks Have to Do With Private Prisons</u>,' GEO Group and CoreCivic have a long history of profiting from mass incarceration: they make money when beds are filled, justly or unjustly. . .").[5]  Indeed, the concept of family separation is not mentioned until the next paragraph, in a substantively different way, and without repeating or referencing to the earlier post.  *Id.*  This is not sufficient to create a republication.  The March 5 Post's reference and link to the Sept. 25, 2018 Post does not repeat any of the allegedly defamatory statements in the earlier post, thus it did not republish those statements.[6]  Nor did Simon's March 6, 2019 tweet result in a republication of

---

[5] *See* https://www.forbes.com/sites/morgansimon/2019/03/05/jpmorgan-chase-is-done-with-private-prisons/#7e3895d7690d

[6] As made clear in *Penrose Hill*, the question of republication in this context is not a fact issue.

DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
Case No. 4:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

the challenged statements in the March 5 or Sept. 25, 2018 Posts, as the tweet does not repeat or display any of those statements, and in fact does not even mention CoreCivic.  *See* Compl. ¶ 54.

**B.      The Family Separation Statements Are Not False, and Do Not Carry the Allegedly "False" Implications CoreCivic Puts Forth**

CoreCivic effectively concedes that none of the Family Separation statements are literally false.  Instead, its Opposition focuses exclusively on the supposed falsity of a series of statements Simon never made, which appear nowhere in the Forbes Posts.  This is hardly surprising, since CoreCivic has not pled (and cannot plead) that there is anything false in Simon's actual statements, which note how the government's policy of separating migrant family members has led to scrutiny of immigrant detention facilities and the private prison companies which operate a third of those facilities.  *See, e.g.*, Ex. 2 at 2.

Preliminarily, CoreCivic claims that the meaning of the Forbes Posts is a question of fact and must be left for a jury to decide.  *See* Opp. at 14.  To the contrary, in a decision affirming pre-discovery dismissal of defamation claims, the California Supreme Court held that where a claimed defamatory implication "is so obscure and attenuated as to be beyond the realm of reasonableness," the claim fails as a *matter of law*.  *Forsher v. Bugliosi*, 26 Cal. 3d 792, 805 (1980).  CoreCivic's claims fail for this precise reason.  Rather than pointing to any actual false statement relating to family separation, CoreCivic sets up a series of increasingly histrionic straw men, claiming that the unstated *implication* of the Forbes Posts is not only that CoreCivic "'operat[es] immigrant detention facilities for children separated from their parents at the [U.S.] border,'" Opp. at 1 (a phrase the Opposition misleadingly "quotes," though it appears *nowhere* in any of the publications at issue), but also that it "is responsible for abuses in those facilities," *id.*, and spent decades and millions of dollars lobbying "to enrich itself by incarcerating immigrant children separated from their parents at the border."  *Id*. at 3.  Whether these manufactured statements are false is of no moment, because Defendants said no such thing.  The Forbes Posts refer to Families Belong Together and discuss family separation and the role of private prisons in

---

The 1980 case Plaintiff cites for this idea relates to whether a repetition (a.k.a. republication) of a slander is foreseeable.  *See McKinney v. Cty. of Santa Clara*, 110 Cal. App. 3d 787, 798 (1980).  It has nothing to do with the statute of limitations.

7

DAVIS WRIGHT TREMAINE LLP

immigrant detention.  They cannot reasonably be read as accusing CoreCivic of operating facilities

*for children*, much less of spending decades lobbying for criminal laws that would allow it to enter

and profit from the unaccompanied-minor-detention "market."

The core fallacy of CoreCivic's arguments is a presumption that the term "family

separation" can *only* refer to the isolation and detention of children, which willfully ignores the

countless migrant adults separated from their children, spouses, and/or extended family members,

who are also members of separated families, in addition to incarcerated American citizens writ-

large who are regularly separated from their families.  Indeed, in its Opposition, CoreCivic even

acknowledges that family separation and detaining children are two different things.  *See* Opp. at 3

(claiming the Forbes Posts linked CoreCivic to "the family separation policy ***and*** detention of

immigrant children") (emphasis added).  This is *precisely* the point Simon emphasized in

clarifying the March 5 Post (a clarification CoreCivic insisted upon, and now attempts to use

against her, *see* Compl. ¶ 62, Opp. at 14-15):  "Family separation" is by its own words "more

broad" than the concept of child detention, because it concerns the *entire family*.  *See* Ex. 4 at 5.

In short, the Forbes Posts at no point accuse CoreCivic of detaining unaccompanied

migrant children, and such an accusation cannot be reasonably inferred by statements connecting

CoreCivic to "family separation."  CoreCivic cannot plead material falsity on the sole basis that it

"does not and has never operated immigrant detention facilities for children separated from their

parents at the border," Opp. at 4, because the Forbes Posts do not state otherwise.

**C.   The Forbes Posts Are Akin to Opinion Columns and Should Not Be Subjected to an Over-Literal Reading**

In its Opposition, CoreCivic characterizes the Forbes Posts as self-interested marketing

pieces, which "promote" Simon.  *See* Opp. at 8.  Yet in the same breath, it claims that the Forbes

Posts are meant to be "factual and historical. . . . articles" published on a "news website."  Opp. at

16.  Again, CoreCivic cannot have it both ways.  Any reasonable reader of the Forbes Posts would

understand that they are not news articles or advertisements, but pieces of advocacy, describing

the context and progress of an activist campaign of which the author is a part.  This "setting

denot[es] opinion as opposed to fact."  *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123

DAVIS WRIGHT TREMAINE LLP

(C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000).

Thus, to the extent the Forbes Posts convey a negative view of CoreCivic in light of its undisputed participation in immigrant detention under an administration that separates immigrant families, that must reasonably be read as the "personal viewpoint of the author," *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).  Simon's personal stance against private immigrant detention companies like CoreCivic cannot be read as a statement of implied fact, and certainly not as an implied claim that CoreCivic itself "operates immigrant detention facilities for children separated from their parents under the Government's family separation policy."  Opp. at 16.  As set out above, the Posts neither state nor imply any such thing.  *See* Section II.B, *supra*.

Moreover, because of the clear subjective "tenor" of Simon's statements, it is also unreasonable to pick them apart and hold them under a lexicographic microscope.  The Lobbying Statements cannot be reasonably read as false solely because they employ a broader definition of "lobbying," which includes CoreCivic's strategic campaign donations and participation in legislative counsels—namely, the activities reported in the linked NPR and Business Insider Articles.  *See also Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1050 (S.D. Cal. 2020) (a technically false accusation, even prefaced with the word "literally," would still be understood by viewers as opinion, given context), *appeal filed*, No. 20-55579 (9th Cir. June 3, 2020).  Yet CoreCivic builds its entire claim of falsity on a hyper-literal definition of lobbying that would exclude the influence campaigns to which Simon refers.  The term "lobby" is not so narrowly defined.  *See Steam Press Holdings, Inc. v. Haw. Teamsters, Allied Workers Union, Local 996*, 302 F.3d 998, 1009 (9th Cir. 2002) (in a labor dispute, accusations that employer was "making money" and "hiding money" were non-actionable opinion because "[a] phrase like 'making money' does not possess a singular, concrete, and therefore readily verifiable, meaning").  CoreCivic's unreasonably limited reading cannot by itself transform Simon's statement, whose broader meaning is disclosed by explicit reference to the NPR and Business Insider Articles,[7] into an actionable false factual assertion.

_____

[7] CoreCivic cites *Flowers v. Carville*, 310 F.3d 1118, 1129 (9th Cir. 2002) for the idea that "a defamatory statement isn't rendered nondefamatory merely because it relies on another defamatory statement."  Opp. at 18.  However, though the Complaint discusses the contents of the

DAVIS WRIGHT TREMAINE LLP

In its Opposition, CoreCivic attempts to brush away the on-point decisions in *Cochran*, *Partington*, and *Herring Networks*, claiming that the "hyperbolic," "firebrand," and "dramatized" publications in those cases "contrast markedly" with the "factual and historical" Forbes Posts. Opp. at 16.  This hollow characterization does not stand up to scrutiny.  *Partington* concerned a nonfiction book about historical events, while *Cochran* and *Herrington* concerned "opinion" pieces presented in the context of news publications.  *See* Mot. Br. at 13-14.  The Forbes Posts not only present as opinion columns (starting with the indication that Simon is a Forbes.com "contributor," not a staff reporter, *see e.g.*, Ex. 2 at 1), they also reflect Simon's personal involvement in the large advocacy campaigns being described.  Some of the posts disclose that Simon and Candide are part of the larger Families Belong Together "committee" leading the campaign to pressure banks to cut ties with private prisons, and the March 5 Post touts additional activism against private prisons organized by Candide's project Real Money Moves.  *See* Ex. 2 at 2; Ex. 1 at 2; Ex. 5 at 5.  The specific language Simon uses, moreover, makes her own stance on the issues obvious.  *See, e.g*., Ex. 2 at 1 (describing JPMorgan Chase's decision to stop lending to private prisons as a "big win for the world of corporate accountability").

In sum, any reasonable reader would understand that the Forbes Posts are opinion columns that reflect Simon's subjective views on the issues described.  The "totality of the circumstances" surrounding the statements at issue thus do not support CoreCivic's hyperliteral reading of the Lobbying Statements, nor do they support imposing specific, unstated factual implications on Simon's statements criticizing the private prison industry as a whole.

**D.    CoreCivic Has Not Met the Pleading Standard for Special Damages, and Concedes That the Lobbying Statements Are Not Defamation Per Se**

By failing to present a single argument that the Lobbying Statements are defamatory "on their face," *see* Opp. at 18-20, CoreCivic concedes that they are not.  Instead, the Opposition relies on the standard for defamation per quod, but strains even under this more liberal standard to paint a defamatory meaning into the Lobbying Statements.  For instance, the Opposition claims that

NPR and Business Insider Articles, *see* Compl. ¶¶ 81-82, it never pleads that the reporting therein on CoreCivic's political influence campaigns is false or defamatory.  The Lobbying Statements cannot be found defamatory by virtue of loosely summarizing reporting in these articles.

10

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

Simon's statements that it has lobbied for "three decades to push for harsher criminal justice and immigration laws" are defamatory because, in context, they imply that CoreCivic engaged in this lobbying "*for the purpose of* enriching itself by detaining children separated from their parents under the Government's family separation policy." Opp. at 19. Putting aside that the Forbes Posts do not *ever* accuse CoreCivic of detaining children separated from their parents, the timeline alone lays this far-fetched reading bare. Simon referred to lobbying across three *decades*, while the Government's family separation policy has been in place for under three *years*. Compl. ¶¶ 28-30.

Regardless, the claims based on the Lobbying Statements fail because CoreCivic has not sufficiently pled special damages proximately caused by those statements (as it must, since it concedes they are not defamatory per se). "When special damage is claimed, the nature of the special loss or injury must be particularly set forth" and include allegations which "set forth precisely in what way the special damage resulted." *Anderson v. Hearst Pub. Co.*, 120 F. Supp. 850, 852 (S.D. Cal. 1954) (quoting *Pollard v. Lyon*, 91 U.S. 225 (1875)). *See also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1010 (9th Cir. 2001) (a plaintiff "must allege and prove that they suffered special damages as a *proximate result* of the publication of the" allegedly libelous statements) (emphasis added). Rule 9(g) of the Federal Rules of Civil Procedure also requires that special damages be "specifically stated" in a pleading, which requires not only facts showing that a business loss occurred following the publication at issue, but also that "that such loss . . . [was] the natural and probable result of such publication[.]" *GOLO, LLC v. Higher Health Network, LLC*, No. 3:18-CIV-2434-GPC-MSB, 2019 WL 446251, at *11 (S.D. Cal. Feb. 5, 2019) (quoting *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998)).

The Complaint does not meet this standard. CoreCivic alleges that it had to enter into a less favorable term loan "due to the market pressure that Defendants deliberately manufactured with their false accusations," Compl. ¶ 116, but has failed to plead facts that could explain how its additional loan costs could have been "the natural and probable result" of the specific, allegedly false statements made in the Forbes Posts. Rather, CoreCivic pleads that these costs were the result of broader letter writing campaigns (spearheaded by the Families Belong Together coalition and others) to pressure banks to cut ties with private prison companies. *See* Compl. ¶¶ 57, 107-

11

114 (linking decisions by JPMorgan and Bank of America to stop lending to private prisons to Families Belong Together, unrelated protests, and publications *not at issue in this litigation*). But CoreCivic has not sued over these larger campaigns to end private prisons (nor could it); it has sued over particular allegedly false statements made by Simon alone in the Forbes Posts, and it fails to explain "specifically" how those false statements led to any special damages. Because the Lobbying Statements are concededly not defamatory per se, CoreCivic's failure to plead special damages is fatal to its claims based upon them.

### III.   THE COMPLAINT FAILS TO RAISE A PLAUSIBLE INFERENCE OF ACTUAL MALICE

CoreCivic does not dispute in its Opposition that it is a public figure which must plead and prove actual malice. Yet the Complaint does not meet even the initial plausibility threshold for any such assertion. Instead it relies upon on a grab bag of allegations courts have repeatedly held are insufficient as a matter of law to demonstrate actual malice. The accumulation of CoreCivic's deficient allegations cannot—contrary to its claims in the Opposition—create something from nothing. Nor can CoreCivic skip past this critical threshold showing because some pre-*Twombly* cases considered actual malice a jury issue. *See* Opp. at 21 (citing cases from 1968-1998); *cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *current* pleading standards, CoreCivic must plead facts that raise a plausible inference of actual malice to survive a Rule 12(b)(6) motion. *See* Mot. Br. at 19. It has failed to do so.

*First*, actual malice cannot be shown where the statements complained of are not false. *See Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 513 (1991). Accordingly, it makes no difference whether CoreCivic has sufficiently alleged that Simon knew it does not "operate[] immigrant detention facilities for children separated from their parents at the [U.S.] border," Opp. at 21-22, since Simon never claimed otherwise. Instead, Simon referred to private prisons' involvement in *family* separation, and the Complaint does not plead Simon knew or had reason to know this was false. In fact, the Complaint does not even allege it *is* false—because it is not.

*Second*, CoreCivic argues that its allegation regarding Simon's supposed "financial motivation" is a "relevant evidentiary building block toward proving actual malice." Opp. at 22-

DAVIS WRIGHT TREMAINE LLP

24.  But this financial motivation theory is absurd, and completely implausible.[8]  It requires accepting untenable presumptions:  First, that an effort to reduce debt funding to private prisons could somehow be expected to redirect investment to Defendants; and second, that *the specific false statements at issue* could be expected to contribute to this imagined revenue stream of redirected former private prison investors.  *See Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) ("To recover, plaintiffs cannot ground their claim 'on a showing of intent to inflict harm,' but must, instead, show an 'intent to inflict harm through falsehood.'") (quoting *Henry v. Collins,* 380 U.S. 356, 357 (1965)); Mot. Br. at 21.  CoreCivic's attenuated theory bears no relation to the cases it cites, where the defendants had an expectation of *direct* financial benefit resulting from the allegedly false statements themselves.  *See Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1135 (9th Cir. 2003) (though "financial motive cannot, by itself, prove actual malice," it could bear on an actual malice inquiry where plaintiff had produced evidence that defendant "needed a blockbuster story" to raise revenue and concocted the false story at issue for that purpose); *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1042 (9th Cir. 1998) ("pecuniary motive" was relevant to actual malice where editor admitted that "not 'very accurate'" front page was intended to "sell the paper").  *Cf. Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1086 (9th Cir. 2002) (evidence of financial motive did not factor into actual malice finding, which was based on evidence of subjective awareness of falsity).  In short, CoreCivic's ridiculous theory that Simon engaged in activism against the private prison industry (along with millions of others, *see* Ex. 5 at 4) for personal financial benefit does not meet the federal pleading threshold, much less provide a "building block" for a claim of actual malice.

  ***Third***, CoreCivic focuses on Simon's knowledge of its denials regarding the Lobbying Statements, as well as her failure to reach out for comment.  *See* Opp. at 22-23, 25.  Yet numerous cases have found these facts *cannot* be evidence of actual malice.  *See* Mot. Br. at 22; *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1254 n.10 (9th Cir. 1997) (there is "no requirement" that a publication call the subject of an article for comment, particularly since, "[g]iven the bad blood

---

[8] CoreCivic's additional theory of preconceived storyline (Opp. at 25) is, moreover, conclusory, and is not supported by any facts alleged in the Complaint.

between" the parties, the defendant "could not have expected to obtain reliable information from [plaintiff]"). As CoreCivic admits, a cumulative claim of actual malice still requires "[e]vidence of negligence, of motive and of intent." Opp. at 21. A failure to reach out for comment does not even evidence negligence, much less motive or intent. *See Eastwood*, 123 F.3d at 1254 & n.10 (while there was sufficient evidence of actual malice, this did *not* include defendant's failure to reach out for comment); *D.A.R.E Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1284 n. 3 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) (collecting cases); Mot. Br. at 22.

Moreover, the law is clear that a "reporter need not believe self-serving denials, 'as such denials are so commonplace in the world of polemical charge and countercharge.'" *Harris v. City of Seattle*, 152 F. App'x 565, 569 (9th Cir. 2005) (citation omitted). For a denial to factor into actual malice *at all*, there must be "something in the content of the denial or supporting evidence produced in conjunction with the denial that carries a doubt-inducing quality." *Id.* (citation omitted). But here, the denials CoreCivic points to relating to lobbying are the same rote recitation, and set out no doubt-inducing facts or evidence. *See* Compl. ¶¶ 82, 83, 86, 88, 89. In fact, some are contained in larger reports that inspire doubt *in the denials themselves*. *See* Opp. at 22, Exs. 6, 7; Mot. Br. at 23.[9] The fact that CoreCivic's same denial appears in other public sources (which Simon may or may not have known about), does not make it more deserving of credit. *See* Opp. at 24. Finally, CoreCivic cannot save these allegations by renaming them, conclusorily, "purposeful avoidance of the truth." Opp. at 24-25. Purposeful avoidance can occur where a defendant avoids gathering evidence that it *knows* could "either credit or discredit" an unreliable source's statements. *Connaughton v. Harte Hanks Commc'ns, Inc.*, 842 F.2d 825, 843 (6th Cir. 1988), *aff'd*, 491 U.S. 657 (1989). There can be no "purposeful avoidance" here, since the only "additional evidence" CoreCivic points to is more of its own identical denials, which

---

[9] CoreCivic's Opposition (and its response to Defendants' Request for Judicial Notice) contends that the content of the NPR and Business Insider Articles should not be considered on this motion, because it is a question of fact whether Simon relied upon them. Opp. at 22-23. However, Simon is not the one who made this claim. Rather, *CoreCivic* alleged that Simon reviewed the two articles before publishing the Forbes Posts, and holds her accountable for being aware of their contents. *See* Compl. ¶¶ 80-82, Opp. at 22. CoreCivic cannot have it both ways, premising a claim of actual malice on Simon's knowledge of these two articles, but insisting that it is a factual issue whether she was aware of their contents. CoreCivic is bound to its own allegations.

DAVIS WRIGHT TREMAINE LLP

1    Simon was not required to credit.  Nor would evidence exclusively from *federal* lobbying

2    databases—even if Simon had reviewed those databases—prove that CoreCivic does not lobby for

3    criminal laws, which are largely enacted on the *state* level.  *See* Opp. at 24.  *See also* Exs. 6, 7

4    (reporting on CoreCivic's state-level lobbying efforts); Ex. 8 at 26 (describing the difficulty of

5    tracking state-level lobbying given inconsistent disclosure laws).

6        ***Finally***, CoreCivic claims that Simon's "steadfast refusal to retract" is relevant to actual

7    malice.  In support, CoreCivic cites a District of Columbia Circuit opinion on a petition for

8    rehearing, which was superseded by the subsequent *en banc* decision finding *no* actual malice.

9    *See Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987).  By contrast, numerous more recent

10   federal court decisions have held that a failure to retract is not evidence of actual malice.  *See, e.g.,*

11   *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996) ("McFarlane

12   presents no authority, however, nor are we aware of any, for the proposition that a publisher may

13   be liable for defamation because it fails to retract a statement upon which grave doubt is cast after

14   publication"); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281 (S.D.N.Y. 2013) (dismissing for

15   failure to plead actual malice notwithstanding failure to retract, and noting that "a failure to retract

16   occurs, by definition, *after* publication, meaning that its probative value as to a defendant's state

17   of mind at the time of publication is dubious at best."), *aff'd*, 807 F.3d 541 (2d Cir. 2015),

18   and *aff'd*, 622 F. App'x 67 (2d Cir. 2015) (summary order).  *See also* Mot. Br. at 22.  However,

19   the point is theoretical, since Simon *did not refuse to retract*.  In fact, as the Complaint admits,

20   Simon made changes and clarifications to both the March 5 and September 25 Posts in response to

21   CoreCivic's demand, modifying the Lobbying Statements so that they no longer include any

22   allegedly false facts, and adding a clarification that the March 5 Post "does not intend to suggest

23   that CoreCivic or GEO Group housed children separated from their parents pursuant to the Trump

24   family separation policy."  *See* Ex. 4 at 5, Ex. 5 at 3-4; Compl. ¶¶ 95, 63.  CoreCivic cannot raise

25   an inference of actual malice, even in part, on Simon's supposed "refusal" to retract.

26                                    **CONCLUSION**

27        For the foregoing reasons, the Court should strike CoreCivic's Complaint and award

28   Defendants their attorneys' fees in a motion to be separately briefed.

15

1

Dated:  September 24, 2020

Respectfully submitted,

2

3

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
ABIGAIL B. EVERDELL

4

5

By:   _/s/ Thomas R. Burke_____
        THOMAS R. BURKE

6

7

Attorneys for Defendants
Candide Group, LLC and Morgan Simon

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

16