Thomas R. Burke (State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

Abigail B. Everdell (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
Email: abigaileverdell@dwt.com

Attorneys for Defendants
Candide Group, LLC and Morgan Simon

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CORECIVIC, INC.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CANDIDE GROUP, LLC and MORGAN SIMON,<br><br>　　　　　Defendants. | Case No. 3:20-cv-03792-WHA<br><br>**DECLARATION OF THOMAS R. BURKE IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Motion for Attorneys' Fees and Costs and Proposed Order Filed Concurrently]<br><br>Date:　　　　February 25, 2021<br>Time:　　　　8:00 a.m.<br>Place:　　　　Courtroom 7<br><br>Action Filed:　　　March 4, 2020<br>Action Transferred:　June 7, 2020 |

DAVIS WRIGHT TREMAINE LLP

## <u>DECLARATION OF THOMAS R. BURKE</u>

I, Thomas R. Burke, hereby declare as follows:

1.     I am a partner with Davis Wright Tremaine LLP ("DWT"), attorneys for defendants Candide Group, LLC ("Candide") and Morgan Simon ("Simon") (together, "Defendants") in this action. I am admitted to appear before this Court and all state and federal courts in California. I have personal knowledge of the facts stated in this declaration and could competently testify to them if called as a witness. I submit this declaration in support of Defendants' Motion to Recover Attorneys' Fees and Costs ("Fees Motion") pursuant to Section 425.16(c) of the California Code of Civil Procedure (the "anti-SLAPP Statute").

2.     This case involves defamation claims asserted by Plaintiff CoreCivic Inc. ("CoreCivic") – one of the country's largest private prison and immigrant detention companies – against Defendants, arising from a series of contributor posts authored by Simon and published at Forbes.com (the "Forbes Posts"). In the Forbes Posts, Simon criticized the private prison industry's outsized role in detaining immigrants and thereby profiting from the pain and suffering of immigrant families torn apart under the Trump administration's family separation policy. Though it does detain immigrant adults who have been separated from their families, CoreCivic objected to being associated with the family separation policy because it claimed it does not house unaccompanied immigrant children. CoreCivic also objected to Simon's characterization of its lobbying activities, which she based upon two news reports published at NPR.com and BusinessInsider.com while providing links to this reporting. CoreCivic's Complaint was filed by Clare Locke LLP, a plaintiff's firm that specializes in defamation, and boasts "extensive experience representing clients against major print, broadcast, and online media outlets."[1]

3.     On August 6, 2020, Defendants filed a Special Motion to Strike Plaintiff's Complaint ("anti-SLAPP Motion") (Dkt. 41). Following briefing and argument on that motion, as well as intervening briefing on CoreCivic's administrative motion concerning the applicability of procedural rules of the anti-SLAPP Statute, the Court entered an order dismissing CoreCivic's claims with prejudice, and entered judgment in favor of Defendants the same day. (Dkts. 60, 61.)

---

[1] *See* http://clarelocke.com/defamation/.

## Rates and Qualifications of DWT Attorneys

4.      Defendants have been represented in this matter primarily by myself and DWT Associate Abigail Everdell, with assistance from paralegal Noel Nurrenbern and, in connection with this Fees Motion, additional assistance from junior associate Andrew Row.  All of the timekeepers who have worked on this case at our firm have maintained contemporaneous time and billing records throughout this case.  The following chart reflects our billing rates in this case:

| 5.  Name | Title | Hourly Rate |
|---|---|---|
| Thomas R. Burke | Partner | $810.00 |
| Abigail Everdell | Associate | $555.00 |
| Andrew Row | Associate | $430.00 |
| Noel Nurrenbern | Paralegal | $240.00[2] |

6.      DWT is a national law firm of more than 500 lawyers.  The firm is annually recognized by *Chambers USA*, *Best Lawyers in America*, *U.S. News & World Report* and others nationally and in California for its First Amendment, media, and public records litigation practice. DWT is based in Seattle, and has two California offices in San Francisco and Los Angeles.  DWT has a number of other offices, including one in New York City.

7.      As a practicing California media lawyer, the former co-chair of DWT's media practice (2013–2017), and someone who regularly reviews court rulings involving anti-SLAPP litigation, I am familiar with rates charged by other firms in California with attorneys who specialize in media, First Amendment, and anti-SLAPP litigation.  Based on my knowledge of the San Francisco Bay Area legal market, these rates are well within the range of rates charged by other comparable firms.  These rates are particularly reasonable in light of the respective professionals' experience, skills, and reputations.

8.      I have over 30 years of experience in media law and First Amendment litigation matters.  I graduated *magna cum laude* in 1989 from the University of San Francisco School of Law and have been in private practice in the Bay Area ever since.  During law school, I was an

---

[2] Ms. Nurrenbern's standard rate is $360 per hour, which reflects her superlative skills and more than three decades of experience as a paralegal.  However, in an exercise of billing discretion, we have determined to reduce Ms. Nurrenbern's rate in this case to $240 per hour.

DECLARATION OF THOMAS R. BURKE
Case No. 3:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

extern law clerk for the Honorable Marilyn Hall Patel of this Court. I began my law practice as an associate with the law firm of Crosby, Heafey, Roach & May in Oakland, California where I was the primary "outside" newsroom counsel for several daily newspapers, including Bob Maynard's *Oakland Tribune*. I joined DWT in December of 1996 and became a partner of the firm in 1999. In 2002, I became a Lecturer at the Graduate School of Journalism at the University of California, Berkeley, and I am currently a Continuing Lecturer with the University, where I teach media law every fall semester. I am also outside legal counsel to the Center for Investigative Reporting in Emeryville. I have substantial experience using California's anti-SLAPP statute and have successfully represented clients in hundreds of anti-SLAPP litigation matters in California's trial and courts of appeal, as well as the California Supreme Court, and the Ninth Circuit Court of Appeals. In 2013, I authored *Anti-SLAPP Litigation* for The Rutter Group's Civil Litigation Series (which is supplemented annually), and annually, I am a Contributing Editor to Weil & Brown, *Cal. Practice Guide: Civil Procedure Before Trial* (Anti-SLAPP Motions). For the past three years I have served as an observer and advisor to the Uniform Law Commission's enactment of the Uniform Public Expression Protection Act (a form of uniform anti-SLAPP statute) that was approved by the National Conference of Commissioners on Uniform State Laws at its Annual Conference in July of 2020. For over the past decade, my media and First Amendment practice has been acknowledged through annual listings in *Chambers*, *Best Lawyers in America* and *Super Lawyers*, among others. My complete biography is available at https://www.dwt.com/people/ThomasRBurke/, and a true and correct copy thereof is attached hereto as **Exhibit A**.

9. DWT Associate Abigail Everdell graduated from Columbia Law School in 2014, with honors, where she was awarded the Michael D. Remer Memorial Award for Aptitude in Arts and Copyright Law. Before joining DWT, Ms. Everdell was an associate at Debevoise & Plimpton LLP in New York City from 2014 to 2016, where she specialized in intellectual property litigation. Ms. Everdell joined DWT's New York City office and media practice in 2016, and since then her practice has focused almost exclusively on media and First Amendment litigation and counseling. Ms. Everdell regularly represents defendants in libel suits, and has litigated cases *pro hac vice* in

California courts.  Ms. Everdell's complete biography is available at

https://www.dwt.com/people/e/everdell-abigail/, and a true and correct copy thereof is attached

hereto as **Exhibit B**.

10.     DWT Associate Andrew Row studied law in his native New Zealand before

obtaining an LL.M. degree from Harvard Law School in 2017.  Before joining DWT, Mr. Row

served as a law clerk to the Hon. Douglas P. Woodlock of the U.S. District Court for the District of

Massachusetts, the Hon. Henry F. Floyd of the U.S. Court of Appeals for the Fourth Circuit, and

the Hon. Dame Susan Glazebrook of the Supreme Court of New Zealand.  Mr. Row's complete

biography is available at https://www.dwt.com/people/r/row-andrew, and a true and correct copy

thereof is attached hereto as **Exhibit C**.

11.     DWT Paralegal Noel Nurrenbern has over 30 years' experience as a paralegal –

including six years at DWT – making her one of the firm's most experienced paralegals.  Mr.

Nurrenbern has been lead paralegal in three jury trials and at two arbitrations.  Ms. Nurrenbern's

complete biography is available at https://www.dwt.com/people/n/nurrenbern-noel, and a true and

correct copy thereof is attached hereto as **Exhibit D**.

12.     When negotiating fees awards in connection with my practice, I use the hourly rates

that my law firm ordinarily charges clients for our professional services, without any discount.  The

vast majority of the time I am able to resolve fees demands using these standard rates without the

need of motion practice.  Recent examples where DWT's standard hourly attorneys' fees rates were

awarded by California courts support the hourly rates sought here.  For example, last year in the

case *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17–cv–02824–JST (N.D. Cal. Apr. 22,

2020), Judge Tigar awarded our client Greenpeace $545,572.36 in anti-SLAPP attorneys fees,

based on the rates sought.  The relevant 2019 DWT partner and counsel hourly rates (which were

discounted due to the nonprofit status of our client Greenpeace) ranged from $585 to $830, and

included my hourly rate of $760.  (A true and correct copy of Judge Tigar's fees decision is

attached hereto as **Exhibit E**).  In late 2018, in connection with *Muslim Advocates v. Los Angeles*

*Police Department*, a multi-year public records lawsuit that Muslim Advocates brought against the

L.A.P.D. that forced the release of long-withheld records about the LAPD's creation of a "Muslim

DAVIS WRIGHT TREMAINE LLP

Watch" program for Los Angeles, the Los Angeles Superior Court awarded Muslim Advocates $516,000 in attorneys' fees and costs based on DWT's standard hourly billing rates, including $710 for my hourly rate in 2017 and a rate of $725 in 2018. In 2015, in a copyright/public records lawsuit, *City of Inglewood v. Teixeira*, the federal court awarded DWT's client $117,741.00 in attorneys' fees and costs, and approved my hourly rate of $645 per hour (for work performed in 2015). In *Public.Resource.Org v. IRS*, 2015 WL 9987018 (N.D. Cal. Nov. 20, 2015), after prevailing in a Freedom of Information Act lawsuit, Judge William Orrick, III awarded attorneys' fees of $238,125.62 in which DWT's hourly rates for 2015 were accepted including my approved $645 per hour rate. In *Pacific Merchant Shipping Association v. Board of Pilot Commissioners,* 242 Cal. App. 4th 1043 (2015), a multi-year public records act trial and appellate matter, after the First District Court of Appeal upheld PMSA's fees award, the attorneys for the State of California stipulated to pay my hourly rate of $645 (2015) and $685 (2016) for my work in connection with that litigation, without the necessity of filing a second fees motion. Finally, in *Los Angeles Times Communications LLC and The McClatchy Company DBA The Sacramento Bee v. University of California Board of Regents,* in 2015, my clients were awarded $233,225 in attorneys' fees by the Alameda County Superior Court, (including nearly $80,000 for "fees on fees") after prevailing in multi-year public records litigation in the trial and appellate courts to make public the names of the police officers involved in the infamous 2011 UC Davis pepper spray incident. My court-approved hourly rate for work performed in 2015 in that that matter was also $645 per hour.

## **Arrangement With Insurers**

13.     Though Simon is not a media company, and authored the Forbes Posts in her capacity as a social activist, she and Candide carry two insurance policies covering the claims asserted by CoreCivic. Defendants' insurance carriers are CNA Insurance and Tokio Marine Insurance.

14.     DWT was contacted about defending these claims based on its reputation as having one of the strongest media and First Amendment defense practices in the country. In the interest of providing Defendants the best possible defense against CoreCivic's SLAPP lawsuit, DWT agreed with the two insurers that our attorneys would be paid at steeply discounted rates, of $400 per hour

DECLARATION OF THOMAS R. BURKE
Case No. 3:20-cv-03792-WHA

for partners, $325 per hour for associates, and $115 per hour for paralegals. Under our arrangement, however, any resulting award of attorneys' fees would be earmarked to reimburse DWT's counsel using the firm's market rates.

15.    The insurers CNA Insurance and Tokio Marine have received invoices from DWT, and as of the date of this declaration, a majority of the fees and costs listed therein either have been fully paid, or are expected to be paid before December 31, 2020.

**Fees Incurred**

16.    Since CoreCivic filed the case on March 4, 2020, Defendants have incurred statutorily recoverable fees and costs in connection with the suit, including in reviewing CoreCivic's Complaint (Dkt. 1), researching legal and factual bases to strike CoreCivic's Complaint; negotiating and preparing a stipulation regarding briefing on Defendants' contemplated motion to strike (Dkt. 36), preparing Defendants' anti-SLAPP Motion (Dkt. 41), reviewing and responding to CoreCivic's Administrative Motion to Confirm Denial of Defendants' Untimely Special Motion to Strike and, in the Alternative, to Conduct Limited Discovery in Response to Defendants' Special Motion to Strike ("Administrative Motion") (Dkts. 43, 44, 45), reviewing and replying to Plaintiff's opposition to Defendants' anti-SLAPP Motion (Dkts. 50, 51), preparing for, and attending, the November 19, 2020, hearing on Defendants' anti-SLAPP Motion (*see* Dkt. 59.), and conferring regarding and preparing the instant Fees Motion.

17.    As outlined below, I have reviewed the billing entries for DWT attorneys and the paralegal working on this matter, stored in DWT's timekeeper software, and have determined that since March, 2020, DWT has spent a total of 313.3 hours of attorneys' and paralegal's time on this matter for which we are seeking reimbursement, exclusive of the time spent in preparing this Fees Motion. More specifically, DWT has spent a total of:

- 63.7 hours researching the legal and factual bases and preparing a strategy for moving to strike CoreCivic's claims under the anti-SLAPP statute;

- 1.7 hours attending to the parties' stipulation regarding briefing on Defendants' anti-SLAPP Motion;

- 91.7 hours drafting Defendants' anti-SLAPP Motion papers;

- 20.1 hours responding to CoreCivic's Administrative Motion relating to Defendants' anti-SLAPP Motion;

- 37.5 hours drafting Defendants' reply in support of their anti-SLAPP Motion; and

- 43.5 hours preparing for and attending the hearing on Defendants' anti-SLAPP Motion.

18.     Based on my extensive experience in connection with anti-SLAPP motions, this number of hours expended was reasonable.

19.     Multiplying the hours spent by the pertinent hourly rates, Defendants have incurred $183,969.00 in attorneys' fees (not including additional fees incurred in preparing this Fees Motion). In an exercise of billing discretion and in avoidance of any doubt, Defendants have discounted these fees by 10% off the top, resulting in a total sought fee recovery of $165,572.10. Again, this sum is exclusive of fees incurred in preparing this motion, but Defendants will provide a complete calculation of such fees in connection with their Reply on this motion. A breakdown of fees by DWT timekeeper is below:

| Name | Rate | Fees incurred on Defendants' Anti-SLAPP Motion | Fees incurred after 10% reduction |
|------|------|------|------|
| Thomas R. Burke | $810.00 | $56,457.00 | $50,811.30 |
| Abigail Everdell | $555.00 | $121,656.00 | $109,490.40 |
| Noel Nurrenbern | $240.00 | $5,856.00 | $5,270.40 |

20.     Mr. Row has billed recoverable fees only to the preparation of this Fees Motion.

21.     Fewer than 60 hours of attorneys' and paralegal's time has been spent, so far, in drafting the instant Fees Motion. Defendants anticipate they will incur additional fees in connection with drafting a reply in support of this Fees Motion and preparing for any hearing before the Court on the Fees Motion. Defendants will supplement this declaration with evidence of recoverable fees and costs in connection with this Fees Motion upon filing their Reply, and will provide additional evidence at the hearing, if any, on this Fees Motion.

22.     Attached hereto as **Exhibit F** is the time detail record of DWT attorneys and paralegals relating to the anti-SLAPP Motion, reflecting time entries through November 19, 2020.

The narrative descriptions in this time detail record have been redacted of attorney-client privileged and work product privileged information, as well as task entries unrelated to the anti-SLAPP Motion and for which recovery is not sought.

23. As a standard billing practice, DWT attorneys and paralegals keep contemporaneous daily time diaries that are entered into the firm's billing system as computerized records ("*pro forma* statements"). These *pro forma* statements list the date service was rendered, the lawyer or paralegal code, the amount of time billed in one-sixth hour increments, the amount to be billed based on historic billing rates, a brief description of service rendered, and other administrative information. The *pro forma* statements are used as the raw data from which final bills are generated. The responsible attorney for a given client typically reviews the *pro forma* and exercises billing judgment before sending out a final bill to exclude time incorrectly billed or to modify amounts to eliminate unproductive or inefficient efforts. The final bill that is normally sent to a client does not show entries that are deleted during the *pro forma* review process but instead includes an invoice that shows the billing detail for the amounts actually charged. Exhibit F reflects this typical editing process.

24. Defendants have limited their fees request to the hours billed by the primary attorneys and paralegal on this matter – namely, Mr. Burke, Ms. Everdell, Mr. Row, and Ms. Nurrenbern – and have excluded at least 8 hours billed by additional attorneys, paralegals, and research staff. Although such time materially assisted with the anti-SLAPP Motion, it was deleted in the exercise of billing judgment to limit the number of timekeepers and streamline the instant fee request. Overall, this reflects a more conservative approach to billing than is required under applicable California anti-SLAPP law.

25. DWT counsel with lower billing rates – principally sixth-year associate Ms. Everdell – researched and prepared initial drafts of the briefing related to the anti-SLAPP Motion. Ms. Everdell also prepared for and argued Defendants' anti-SLAPP Motion before the Court, against two partners from CoreCivic's counsel Clare Locke (including name partner Libby Locke). As the senior partner overseeing the defense, I took a supervisory role, editing the briefing, preparing Ms. Everdell for and supporting her at oral argument, and formulating the overall litigation strategy.

Accordingly, the time entries reflect that I accrued fewer hours at my relatively higher billing rate.

## Costs Incurred

26.     Thus far, DWT has incurred $310 in recoverable costs relating to this case, constituting the filing fee for Ms. Everdell's application to appear *pro hac vice* before this Court.

## Communications with CoreCivic

27.     Pursuant to L.R. 54-5(a), counsel for the parties in this matter met and conferred regarding this Fees Motion on a telephonic conversation on December 3, 2020, and in subsequent email correspondence in which we disclosed to CoreCivic's counsel our standard billing rates, our insured rates and a range of the fees that we would be seeking through the fees motion. After providing this key information, we never received any offer or any further response whatever, necessitating this motion. CoreCivic's Complaint in this matter does not assert a specific amount of damages. However, in its Initial Disclosures served upon Defendants on October 12, 2020, CoreCivic stated its intention to seek between $30 million and $60 million in damages at trial.


I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed this 18th day of December, 2020, at Albany, California.


                                    */s/ Thomas R. Burke*
                                    Thomas R. Burke

DAVIS WRIGHT TREMAINE LLP