Thomas R. Burke (State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
Email: thomasburke@dwt.com

Abigail B. Everdell (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340
Email:   abigaileverdell@dwt.com

Attorneys for Defendants
Candide Group, LLC and Morgan Simon

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CORECIVIC, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>CANDIDE GROUP, LLC and MORGAN SIMON,<br><br>              Defendants. | Case No. 3:20-cv-03792-WHA<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO RECOVER ATTORNEYS' FEES AND COSTS [C.C.P. § 425.16(c)]**<br><br>Judge:        Hon. William Alsup<br>Date:         February 25, 2021<br>Time:         8:00 a.m.<br>Location:     San Francisco Courthouse<br>                   Courtroom 7<br><br>[Supplemental Declaration of Thomas R. Burke, Esq., with Exhibits G-J filed Concurrently]<br><br>Action Filed: March 4, 2020 |

DAVIS WRIGHT TREMAINE LLP

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

I.      DEFENDANTS PREVAILED ON THEIR ANTI-SLAPP MOTION ............................... 2

II.     THE ANTI-SLAPP STATUTE APPLIES TO THIS CASE ................................. 3

        A.      California's Anti-SLAPP Statute Applies in Federal Courts of the Ninth
                Circuit ........................................................................................................ 4

        B.      The Anti-SLAPP Statute's Commercial Speech Exemption Does Not
                Apply Here ................................................................................................ 5

III.    DEFENDANTS' FEE REQUEST IS REASONABLE ....................................... 7

        A.      The Hours Billed by Defense Counsel Were Reasonable ...................................... 7

        B.      Defense Counsel's Market Rates are Reasonable ................................................. 13

CONCLUSION ............................................................................................................. 15

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:20-cv-03792-WHA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Yeager*,
No. 2:13-CV-00007 KJM DB, 2018 WL 1567819 (E.D. Cal. Mar. 30, 2018).......................11

*Bhambra v. True*,
No. C 09-4685 CRB, 2010 WL 1758895 (N.D. Cal. Apr. 30, 2010).........................................3

*Calvo Fisher & Jacob LLP v. Lujan*,
234 Cal. App. 4th 608 (2015)...................................................................................................10

*Chacon v. Litke*,
181 Cal. App. 4th 1234 (2010)..................................................................................................14

*Credit Suisse First Bos. Corp. v. Grunwald*,
400 F.3d 1119 (9th Cir. 2005)............................................................................................10, 15

*Davis v. City & Cnty. of San Francisco*,
976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*,
984 F.2d 345 (9th Cir. 1993)....................................................................................................13

*Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v.*
*Ceiba Legal, LLP*, 230 F. Supp. 3d 1146 (N.D. Cal. 2017)......................................................3

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019)..................................................................................................................6

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992)................................................................................................7, 8

*Heritage Pac. Fin., LLC v. Monroy*,
215 Cal. App. 4th 972 (2013)....................................................................................................14

*Indep. Living Ctr. of S. California v. Kent*,
No. 2:08-CV-03315-CAS, 2020 WL 418947 (C.D. Cal. Jan. 24, 2020) ..................................14

*Ingels v. Westwood One Broad. Servs., Inc.*,
129 Cal. App. 4th 1050 (2005)....................................................................................................6

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001)..............................................................................................11, 14, 15

*Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*,
No. CIV. S-14-0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014)................................11

*Lissner v. U.S. Customs Serv.*,
56 F. App'x 330 (9th Cir. 2003).................................................................................................12

ii

*Major v. Silna*,
   134 Cal. App. 4th 1485 (2005)................................................................................ 6

*Makaeff v. Trump Univ., LLC*,
   736 F.3d 1180 (9th Cir. 2013)............................................................................... 5

*Maloney v. T3Media, Inc.*,
   No. CV 14-05048-AB VBKx, 2015 WL 3879634 (C.D. Cal. May 27, 2015)......................... 1

*Manufactured Home Communities, Inc. v. Cnty. of San Diego*,
   655 F.3d 1171 (9th Cir. 2011)............................................................................. 10

*Maughan v. Google Tech., Inc.*,
   143 Cal. App. 4th 1242 (2006)............................................................................ 11

*Moore v. Liu*,
   69 Cal. App. 4th 745 (1999)................................................................................ 2

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008).............................................................................. 9

*Nadarajah v. Holder*,
   569 F.3d 906 (9th Cir. 2009)............................................................................... 13

*Nemecek & Cole v. Horn*,
   208 Cal. App. 4th 641 (2012).............................................................................. 14

*Peak-Las Positas Partners v. Bollag*,
   172 Cal. App. 4th 101 (2009).............................................................................. 12

*Pfeiffer Venice Props. v. Bernard*,
   101 Cal. App. 4th 211 (2002)............................................................................... 3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828, *amended by* 897 F.3d 1224 (9th Cir. 2018) ............................... 2, 4, 5

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
   163 Cal. App. 4th 550 (2008)........................................................................... 8, 11

*Raining Data Corp. v. Barrenechea*,
   175 Cal. App. 4th 1363 (2009)............................................................................ 13

*Ramona Unified Sch. Dist. v. Tsiknas*,
   135 Cal. App. 4th 510 (2005).............................................................................. 15

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   No. 17-cv-02824-JST (N.D. Cal. Apr. 22, 2020)....................................................... 11

*Robinson v. Alameda Cnty.*,
   875 F. Supp. 2d 1029 (N.D. Cal. 2012) .................................................................. 3

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973 (C.D. Cal. 1999) ........................................................................... 4

*Rosenaur v. Scherer*,
    88 Cal. App. 4th 260 (2001), *as modified* (Apr. 5, 2001) ......................................... 14

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .................................................................................................. 4, 5

*Simpson Strong-Tie Co. v. Gore*,
    49 Cal. 4th 12 (2010) ..................................................................................................... 6

*Smith v. Payne*,
    No. C 12-01732 DMR, 2013 WL 1615850 (N.D. Cal. Apr. 15, 2013) .............................. 7, 12

*Smith v. Santa Rosa Press Democrat*,
    No. C 11-02411 SI, 2011 WL 7777108 (N.D. Cal. Dec. 19, 2011) ........................................ 12

*Soukup v. Stock*,
    118 Cal. App. 4th 1490, 15 Cal. Rptr. 3d 303 (Ct. App.),
    *as modified on denial of reh'g* (June 21, 2004),
    *rev'd sub nom. Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260 (2006) .................. 15

*Stafford v. Sipper*,
    76 Cal. Rptr. 2d 723 (Ct. App. 1998) ........................................................................... 15

*Stutzman v. Armstrong*,
    No. 2:13-CIV-00116-MCE, 2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ........................ 6

*Taylor v. Viacom Inc.*,
    No. CV-17-3247-DMG, 2018 WL 4959821 (C.D. Cal. June 5, 2018) .................................. 12

*Trope v. Katz*,
    11 Cal. 4th 274 (1995) ................................................................................................. 15

*Witte v. Kaufman*,
    141 Cal. App. 4th 1201 (2006) .................................................................................... 15

**Statutes**

California Code of Civil Procedure
    § 425.16(a) ..................................................................................................................... 2
    § 425.17(d) .................................................................................................................. 5, 6

**Rules**

California Rules of Court, Rule 8.115 ............................................................................... 15

Fed. R. Civ. Proc. Rule 12(b)(6) .............................................................................. 2, 3, 4

# INTRODUCTION

While CoreCivic disparages Defendants' fee request, "[a] plaintiff who brings a bet-the-company lawsuit should expect the defendant to mount a bet-the-company defense." *Maloney v. T3Media, Inc.*, No. CV 14-05048-AB VBKx, 2015 WL 3879634, at *10 n.6 (C.D. Cal. May 27, 2015). Here, in a 48-page complaint, CoreCivic asserted sprawling factual claims, implicating a smorgasbord of abstruse legal issues, in a calculated effort to increase the burdens of defense. On their anti-SLAPP motion, Defendants were challenged with drawing CoreCivic's complex pleadings into focus to reveal the fundamental insufficiency of the claims. They succeeded: After thorough briefing and lengthy oral argument, this Court saw through CoreCivic's attempts to muddy the waters and correctly found that it had failed to satisfy the most fundamental element of a defamation claim – falsity. (Dkt. 60.) Thus, despite CoreCivic's efforts, Defendants prevailed definitively and *with prejudice*. (*Id*.)

On this Fees Motion, Defendants seek to recover fees for only those hours spent pursuing and winning their anti-SLAPP motion, as they are entitled to do. Detailed and thorough contemporaneous billing records submitted with Defendants' Fees Motion establish that each hour for which Defendants seek recovery was *directly connected* to their lean and experienced legal team's work on a successful anti-SLAPP motion. Moreover, Defendants have cut their hours by 10% across the board, to avoid any doubt. The resulting request is both conservative and commensurate with the challenges of responding to CoreCivic's elaborate, but meritless, claims. Indeed, the reasonableness of Defendants' fees request was supported by the uncontroverted declaration of a leading Bay Area media attorney. (*See* Dkt. 69-8.)

In opposing this motion, CoreCivic – the same party that obfuscated the substantial truth of Defendants' statements at oral argument and repeatedly asked this Court to defy binding Ninth Circuit and California Supreme Court precedent on the anti-SLAPP statute – claims Defendants should be awarded no fees *at all*. CoreCivic reasons that defense counsel spent too much time securing a complete victory in the face of exhausting tactics, and apparently charged too little for doing so. CoreCivic fails, however, to challenge the ample evidence Defendants presented, relying

DAVIS WRIGHT TREMAINE LLP

1 instead on expressions of hollow outrage and inapplicable, mischaracterized caselaw.  This is not

2 enough to dispute the reasonableness of the hours incurred by counsel or their market rates.

3 "The purpose of section 425.16 is clearly to give relief, including financial relief in the form

4 of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP

5 lawsuits because of their 'participation in matters of public significance,'" *Moore v. Liu*, 69 Cal.

6 App. 4th 745, 750 (1999) (citing Cal. Code Civ. Proc. § 425.16(a)).  Here, that purpose is served by

7 awarding Defendants their full sought attorneys' fees, including fees for 94.6 total hours spent in

8 bringing this Fees Motion.  (*See* Supplemental Declaration of Thomas R. Burke ("Suppl. Burke

9 Decl.") filed herewith, ¶ 3, Ex. G.)

10 ## I.    DEFENDANTS PREVAILED ON THEIR ANTI-SLAPP MOTION

11 CoreCivic does not dispute that an award of attorneys' fees to a prevailing defendant is

12 mandatory under the anti-SLAPP statute.  Nor does it dispute that Defendants moved to strike

13 under the anti-SLAPP statute, which motion resulted in a complete dismissal of CoreCivic's

14 claims.  Yet, in an attempt to wriggle out of paying mandatory fees, CoreCivic suggests that

15 Defendants *did not prevail* on their anti-SLAPP motion because the Court's decision did not

16 specifically cite the anti-SLAPP statute.  (*See* Dkt. 70 ("Pl. Opp.") at 6.)  Such a citation would

17 have been redundant:  Defendants did not move to dispose of CoreCivic's claims on multiple

18 grounds.  They specifically and *exclusively* moved to strike CoreCivic's claims under California's

19 anti-SLAPP statute.  (*See* Dkt. 41 at 2.)[1]  This is the motion the Court considered, the motion the

20 parties argued, and the motion the Court granted in its November 19 Order.  (Dkt. 60.)  And, in

21 dismissing CoreCivic's claims under a 12(b)(6) standard, this Court correctly applied the Ninth

22 Circuit's instruction in *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, that anti-

23 SLAPP challenges to the legal sufficiency of claims "must be treated in the same manner as a

24 motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies."  890

25 F.3d 828, 834, *amended by* 897 F.3d 1224 (9th Cir. 2018) (citation omitted).  In short, Defendants

26 prevailed on their anti-SLAPP motion.

27

28 [1] *See also* Pl. Opp. at 6 (admitting that Defendants "*only* filed a Special Motion to Strike under Section 425.16" and "did *not* file any Motion to Dismiss").

DAVIS WRIGHT TREMAINE LLP

2

But even if Defendants had brought a parallel motion to dismiss under Rule 12(b)(6), and the Court granted only that motion, Defendants would *still* be entitled to attorneys' fees.  Courts have repeatedly held that "the issue of attorney fees and costs [under the anti-SLAPP statute] is not rendered moot by a dismissal" on other grounds.  *Robinson v. Alameda Cnty.*, 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012) (dismissing on 12(b)(6) grounds, but continuing to examination of anti-SLAPP motion for fees purposes.)  *See also Bhambra v. True*, No. C 09-4685 CRB, 2010 WL 1758895, at *2 (N.D. Cal. Apr. 30, 2010) ("a 12(b)(6) dismissal does not moot a motion to strike").  Thus, in *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146 (N.D. Cal. 2017) (Alsup, J.), this Court held that a trial court "must, upon defendant's motion for a fee award, rule on the merits of the SLAPP motion' even if the matter was dismissed before reaching said merits." *Id.* at 1152 (quoting *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 215 (2002)).  Here, the anti-SLAPP statute applies for the reasons Defendants set out in their anti-SLAPP Motion papers.  (*See* Dkt. 41 at 9-10, Dkt. 51 at 2-5.)  And, "as Plaintiff's complaint has been dismissed with prejudice, Plaintiff has by definition failed" to meet the requirements of the statute's second prong.  *Bhambra*, 2010 WL 1758895, at *2.  Defendants' anti-SLAPP Motion was meritorious, and they are entitled to a mandatory award of attorneys' fees.

## II.    THE ANTI-SLAPP STATUTE APPLIES TO THIS CASE

CoreCivic spends at least a quarter of its Opposition rehashing unsuccessful merits arguments raised in connection with the anti-SLAPP Motion.  This tactic of shoehorning extra merits arguments into every possible brief – a tactic CoreCivic also employed in its "Administrative Motion" this past August (Dkt. 43; Dkt. 45) and in its opposition to a request for judicial notice relating to Defendants' anti-SLAPP Motion (Dkt. 50-1) – underscores once again how CoreCivic is itself responsible for substantially multiplying the hours Defendants have spent in defending this action.  Indeed, though Defendants have brought only one substantive motion, this is the *third* time they have been forced to brief the anti-SLAPP statute's applicability.[2]  CoreCivic has similarly leveraged administrative motion practice to argue the actual malice element of its claims

---

[2] Notably, CoreCivic's first motion on this issue argued for strict application of even procedural aspects of the anti-SLAPP Statute (Dkt. 43 at 2), yet now it argues the statute cannot apply *at all*.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

*three* times.  (Dkt. 43 at 3-5; Dkt. 50 at 20-25, Dkt. 51-1 at 3-5.)  As before, CoreCivic's arguments fly in the face of unambiguous, binding authority.  Under settled Ninth Circuit law, the anti-SLAPP statute applies in federal court.  And, pursuant to clear statutory language and California Supreme Court authority, this case is not subject to the anti-SLAPP statute's commercial speech exemption.

**A.      California's Anti-SLAPP Statute Applies in Federal Courts of the Ninth Circuit**

In its 2018 decision in *Planned Parenthood*, the Ninth Circuit reaffirmed, clearly and unambiguously, that the anti-SLAPP statute's provisions allowing a special motion to strike and providing for fee shifting apply in federal court.  890 F.3d at 834.  Specifically, the Ninth Circuit clarified that a defendant in federal court is not required to present evidence in order to make a special motion to strike, but can bring such a motion solely on the basis of a complaint's legal deficiencies.  In such, cases, the Ninth Circuit held, "the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies."  *Id*. (quoting *Rogers v. Home Shopping Network, Inc*., 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999)).

In opposing Defendants' fees motion, CoreCivic insists that the Ninth Circuit's consistent line of authority finding the anti-SLAPP statute applies in federal court was "abrogated" by the 2010 Supreme Court decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).  *See* Pl. Opp. at 8.  Yet the *Shady Grove* decision hardly dictates that the Ninth Circuit revisit its settled decisions on the anti-SLAPP statute – let alone that this Court was wrong to follow binding Ninth Circuit precedent.  In *Shady Grove*, the Supreme Court concluded that a state law directly conflicted with the Federal Rules of Civil Procedure by "limiting a plaintiff's power to maintain a class action" that it could otherwise bring under Rule 23.  *Id*. at 403, 405.  In other words, *Shady Grove* concerned an unrelated federal rule, and rejected application of a state law that would have *limited* that rule.  There is no possible argument that the anti-SLAPP statute limits Rule 12(b)(6) – in fact, the *Planned Parenthood* court made clear that the anti-SLAPP statute and Rule 12(b)(6) are entirely compatible.  At most, the anti-SLAPP statue *adds* an additional substantive remedy to prevailing defendants, in the form of attorneys' fees.  And *Shady Grove* specifically reserved the question of whether a state law concerning remedies – even one that

4

limits remedies – conflicts with the Federal Rules.  559 U.S. at 401 ("We need not decide whether a state law that limits the remedies available in an existing class action would conflict with Rule 23").

CoreCivic ignores these critical details, and insists that if the Ninth Circuit had the opportunity, it would "revisit its pre-*Shady Grove* precedent."  (Pl. Opp. at 8).  But, the Ninth Circuit *has* been asked to reconsider its prior decisions on the anti-SLAPP statute's applicability *en banc* in light of *Shady Grove*, and it declined to do so.  *See Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013) (Wardlaw, J., Callahan, J., Fletcher, J. and Gould, J., concurring with denial of rehearing *en banc*) (noting "the Supreme Court's decision in [*Shady Grove*] does not change [the] reasoning" of prior Ninth Circuit decisions holding the anti-SLAPP statute is applicable in federal court).  And, in *Planned Parenthood* – also decided after *Shady Grove* – the court reiterated once again that its approach "prevent[s] the collision of California state procedural rules with federal procedural rules."  890 F.3d at 833.  In short, the Ninth Circuit has been consistent and clear, both before ***and after*** *Shady Grove*, that the anti-SLAPP statute applies in federal court.  It is not for this Court to second-guess binding Ninth Circuit precedent.

**B.      The Anti-SLAPP Statute's Commercial Speech Exemption Does Not Apply Here**

CoreCivic also renews its contention that Simon's contributor posts at Forbes.com – though they comment and report upon a grassroots social movement, do not discuss Simon's or Candide Group's professional services, and carry no other trappings of advertising – fall "squarely" within the anti-SLAPP statute's "commercial speech exemption."  Pl. Opp. at 11.  Yet in so arguing CoreCivic once again completely ignores statutory language and binding judicial authority from the California Supreme Court on the commercial speech exemption (authority cited by Defendants in their merits briefing, *see* Dkt. 51 at 2-5), both of which make clear that the commercial speech exemption *cannot* apply here.

First, the anti-SLAPP statute itself *specifically excludes* publications like the Forbes Posts from the commercial speech exemption.  Cal. Civ. Proc. Code § 425.17(d)(2) states that the commercial speech exemption does *not* apply to "[a]ny action against any person or entity based upon the creation[ or] dissemination ... of any dramatic, literary, musical, political, or artistic work, ***including, but not limited to***, a motion picture or television program, or an article published in a

5

newspaper or magazine of general circulation." *Id*. (emphasis added).  Courts have since held that this provision extends to publications akin to the non-exclusive examples listed, including books (*Stutzman v. Armstrong*, No. 2:13-CIV-00116-MCE, 2013 WL 4853333, at *11 (E.D. Cal. Sept. 10, 2013)) radio talk shows (*Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1068 (2005)), and political advocacy letters sent to individual recipients (*Major v. Silna*, 134 Cal. App. 4th 1485, 1495 (2005)).  There is no question that contributor posts on the website of a major news magazine, which report and commentate upon a public advocacy campaign, fall squarely within this statutory exception – and thus squarely *outside* the commercial speech exemption.

Second, CoreCivic's concocted and false theory that Defendants published the Forbes Posts "for the purpose of making a profit," Pl. Opp. at 12, misstates the standard for commercial speech under the anti-SLAPP Statute.  Even if Defendants had a financial motive – and they did not – the California Supreme Court has made clear that financial motive is *not* sufficient to implicate the commercial speech exemption.  Rather, the exemption only applies where the cause of action "***aris[es] from" Defendants' representations about their own "or a business competitor's business operations, goods, or services***."  *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010) (emphasis added).  *See also FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147 (2019) ("425.17, subdivision (c) ... exempts 'only a subset of commercial speech'—specifically, comparative advertising") (emphasis added).  Defendants, a "financial advisor" and her "Investment Advisor" firm (*see* Compl. ¶¶ 8-9), are obviously not "business competitors" with CoreCivic, a private prison and government services company (*id*. ¶ 7).  Nor does CoreCivic claim (and it could not) that Defendants are in the business of extending loans to large corporations or taking consumer deposits like the banks referred to in the Forbes Posts.  In any event, CoreCivic's claims did not arise from Defendants' statements about banks or about their own products or services, but from Defendants' statements about *CoreCivic's* immigrant detention and lobbying practices.  *See Simpson Strong-Tie,* 49 Cal. 4th at 30 (exemption did not apply even though the purpose of an ad *was* to promote the defendant's services, since the plaintiff's claims did not "***aris[e] from*** ... representations of fact about [***the defendant's***] ... business operations, goods, or

DAVIS WRIGHT TREMAINE LLP

1  services.") (emphasis added).  Because the claims here relate solely to statements about CoreCivic,

2  and the parties are not business competitors, the commercial speech exemption cannot not apply.

3  **III.    DEFENDANTS' FEE REQUEST IS REASONABLE**

4          In a particularly rich display, after consistently turning every inch of motion practice into an

5  excuse to raise additional merits issues (and *still* losing their case), CoreCivic now insists that

6  Defendants should be denied fees "altogether" because they expended too much time in defense.

7  Pl. Opp. at 12.  CoreCivic seems to forget that *it sued Simon* – even *after* she posted corrections and

8  clarifications to the Forbes Posts at issue to address CoreCivic's concerns (*see* Compl. ¶¶ 62-63,

9  92-95, Dkt. 41 at 22, 24) – and despite tenacious and exhausting litigation tactics, its failed to meet

10  even a threshold showing under 12(b)(6).  Under settled California law, the consequences of

11  CoreCivic's actions is that *it must bear Defendants' fees and costs in defending this lawsuit*.  No

12  amount of hollow outrage, or citation to inapposite case law, changes this reality.  The only

13  question on this motion is whether the hours billed by defense counsel were reasonable, and

14  whether the market rates sought are reasonable.  CoreCivic's Opposition fails to raise an adequate

15  objection on either front, and offers nothing to counter the evidence and declarations Defendants

16  offered in support of the fees motion.  Defendants should therefore be awarded the full fees sought.

17          **A.      The Hours Billed by Defense Counsel Were Reasonable**

18          CoreCivic fails to meet its burden in opposing Defendants' calculation of recoverable hours.

19  A party opposing a fee request must provide **specific objections** to specific billing entries.  *Gates v.*

20  *Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992); *Smith v. Payne,* No. C 12-01732 DMR, 2013

21  WL 1615850, at *1 (N.D. Cal. Apr. 15, 2013) (citations omitted).  CoreCivic's objections do not

22  cite specific billing entries, instead resorting to making broad characterizations and reciting hours

23  totals that they claim should "shock[] the conscience."  Pl. Opp. at 16.[3]  Such objections do not

24  meet the baseline requirement for opposing a fee request, and should be rejected.  The law is clear

25  that a plaintiff's unsubstantiated assertion of "unreasonableness" does not justify reducing a fee

26

27  ─────────────────────

[3] The sole exception is CoreCivic's quotation of billing entries for approximately 5 hours of
paralegal time, *see* Pl. Opp. at 19, but CoreCivic's objections to these entries fall flat for reasons
28  explained below.  *See infra* at 13.

DAVIS WRIGHT TREMAINE LLP

award.  *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008).  "[I]t is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  *Id*. (emphasis added). *See also Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) ("[t]he party opposing [a] fee application has a burden of rebuttal that requires submission of ***evidence*** to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.") (emphasis added).

Thus, in *Premier*, the court explained that because "[r]espondents supported their fee requests with declarations . . . [and] with billing records to establish the hours of work," the plaintiffs "had two options to oppose such a showing: attack the itemized billings with evidence that the fees claimed were not appropriate, or obtain the declaration of an attorney with expertise in the procedural and substantive law to demonstrate that the fees claimed were unreasonable."  *Id*. at 563-64 (emphasis added). "They did neither."  *Id*. at 564.  Accordingly, the court affirmed fee awards of more than $275,000.  *Id*. at 556, 565.  Similarly, Defendants supported the Fee Motions with substantial evidence, including detailed billing records an declaration from an experienced attorney, but CoreCivic failed to submit any admissible, relevant evidence in opposing the fee requests.  CoreCivic thus fails to meet its burden of showing that Defendants request is unreasonable.  *Premier*, 163 Cal. App. 4th at 563-64.

Nor does CoreCivic call Defendants' hours into question by its bald accusations of excessiveness.  It is not for CoreCivic to decide what amount of hours *should have* been spent by Defendants in responding to a lawsuit CoreCivic instigated, which claimed *tens of millions of dollars* in damages (*see* Compl. ¶ 116), for which they hired the most prominent plaintiff's defamation counsel in the country,[4] and which thus presented an existential threat to Defendants.

---

[4] Ms. Locke is one of two name partners at the Clare Locke firm, which touts itself as "The best plaintiff-side defamation law firm in the United States," "Media assassins," and "One of the most feared litigation firms in the country."  *See* https://clarelocke.com.  Ms. Locke's partner Ms. Meier, was also recently engaged to represent Dominion Voting Systems in an extremely high profile series of billion dollar suits arising from baseless voter fraud claims by prominent supporters of Donald Trump.  *See* https://www.nytimes.com/2021/01/08/us/politics/dominion-voting-systems-

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

Indeed, the Ninth Circuit has observed that courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Defendants had every right to zealously defend this suit, and are not limited by the arbitrary "75 hours" limit CoreCivic would impose upon its defense. *See* Pl. Opp. at 13.

Indeed, it was CoreCivic's own tactics that necessitated a time-consuming defense. First, CoreCivic's contention that this case only involved "straightforward defamation claims based on a handful of short articles" obscures its painstaking efforts to wedge as many legal issues as possible into its complaint and five anti-SLAPP-related court filings. To start with, though the claims at issue concerned only two *actionable* articles, CoreCivic attempted to raise additional claims based on a third, long since time-barred article, as well as tweets linking to one of the articles. (Compl. ¶ 120(b), (c).) Not content, CoreCivic also asserted claims based on updated versions of two articles that included clarifications *CoreCivic had demanded*, asserting that these updates created brand new publications. (*Id*. ¶¶ 120(e), (f).) Then, for each of these six alleged "publications," CoreCivic asserted defamation *and* defamation-by-implication claims. (*Id*. ¶¶ 120, 135.) In short, CoreCivic attempted to drum no less than a *dozen* causes of action out of a pair of Forbes.com posts. This tactic not only required a thorough untangling effort, it also required painstaking research and tailored arguments to address each of CoreCivic's numerous angles. And all this before reaching the substance of the claims, which CoreCivic similarly complicated by asserting the articles carried a gestalt false "implication," but repeatedly moved the ball by changing its articulation of what the supposed "implication" in fact was. (*Compare* Compl. ¶ 136 *with* Dkt. 50 at 3, 19.)

CoreCivic's litigation tactics followed this same pattern. Though, as CoreCivic admits, "Defendants filed a single Special Motion to Strike," CoreCivic was not content with a single round of motion practice, instead insisting on raising merits arguments *three* additional times. First, in an ostensible "Administrative Motion" concerning case deadlines, CoreCivic raised an entirely novel theory that the statute's procedural deadlines rendered Defendants' motion time barred in federal

files-defamation-lawsuit-against-pro-trump-attorney-sidney-powell.html; https://www.cnbc.com/2020/12/24/dominion-voting-warns-fox-news-lawsuits-are-imminent.html.

9

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

court, and then took the opportunity to counter the substantive actual malice arguments in Defendants' anti-SLAPP motion.  (*See* Dkt. 43.)  Responding to this entirely inappropriate motion – which CoreCivic decisively lost (*see* Dkt. 46) – required a not-insignificant amount of effort, perhaps belied by the five-page limit on Defendants' response imposed by this Court's local rules.[5] CoreCivic repeated this approach in its response to Defendants request for judicial notice, which raised substantive arguments concerning the actual malice pleading requirement, and now *again* in its opposition to this Fees Motion.  In short, CoreCivic took every opportunity to litigate aggressively and multiply these proceedings, and cannot now argue that defense counsel should have spent less time achieving a hard-fought victory.  *See Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 627 (2015).

Nor do CoreCivic's more specific objections find support in the law.  ***First***, CoreCivic claims that Defendants are not entitled to recover fees incurred in negotiating, preparing, and filing a stipulation *concerning its anti-SLAPP Motion* and in responding to an Administrative Motion filed by CoreCivic, which asked the Court to "confirm" that "Defendants' Motion to Strike is procedurally defaulted, is untimely under settled precedent, and it is denied" (Dkt. 43 at 3), and in the alternative asked for "limited discovery" so it could "fairly respond to" Defendants' anti-SLAPP Motion."  (*Id*. at 4).  In short, the Administrative Motion was a direct response to Defendants' anti-SLAPP Motion.  (It was also unsuccessful (*see* Dkt. 46).)  Defendants are entitled to recover this time.  *See Manufactured Home Communities, Inc. v. Cnty. of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011) (time for an earlier unsuccessful anti-SLAPP motion was recoverable where motion "laid the groundwork" and had "overlapping" issues with the subsequent successful anti-SLAPP motion).  CoreCivic cites no authority to the contrary.  *See* Pl. Opp. at 15-16.

***Second***, after making broad declarations that Defendants' hours were excessive, CoreCivic suggests that recoverable time to defend *any* anti-SLAPP Motion should be capped at 75 hours.

---

[5] CoreCivic's opposition repeatedly suggests that Defendants' compliance with the Local Rules' page limitations somehow limits their entitlement to fees.  (Pl. Opp. at 1, 3, 4, 15-16.)  Yet as any litigator knows, brevity is often more time consuming than length.  CoreCivic also questions how two attorneys could have billed 20 hours in two days.  (*Id*. at 16.)  This disingenuous claim ignores that records show two attorneys billed that time across *four* days, beginning when the parties conferred on the motion, and ending when CoreCivic filed its reply.  (*See* Exhibit F at 14-16.)

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:20-cv-03792-WHA

*See* Pl. Opp. at 16-18.  The *per se* rule CoreCivic advances runs contrary to clear authority.  As the court in *Premier* stated, "[w]e decline the invitation [to adopt an upper limit on hours or fees] as contrary to the guidelines set by the [California] Supreme Court in *Ketchum*. . . . [E]ach fee application under section 425.16, subdivision (c) must be assessed on its own merits according to the principles discussed in *Ketchum*, taking into account what is reasonable under the circumstances." 163 Cal. App. 4th at 561.  The *Premier* court concluded that a "broad rule adopting a 50-hour limit would be contrary to this case-by-case approach." *Id*.  *See also Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST, at *3, 8 (N.D. Cal. Apr. 22, 2020) (Dkt. 69-1 ("Burke Decl."), Ex. E.) (awarding $545,572.36 in total fees incurred in bringing two anti-SLAPP motions to dismiss, based on over 1,000 total hours and Davis Wright Tremaine's billing rates).

The cases cited by CoreCivic do not call this settled principle into question.  Rather, each found hours excessive for specific and definable reasons, supported by evidence.  In *Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242 (2006), for example, the trial court limited defendant's recoverable hours to 50 largely because plaintiff's counsel submitted evidence that *they* had only expended 50 hours "in complete representation of [their] client," in a case that "mainly" sought "injunctive relief."  *Id*. at 1251-52 & n.8.  CoreCivic presents no such evidence here.  Similarly, in *Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, No. CIV. S-14-0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014), the court declined to award hours not associated with the anti-SLAPP motion, and further reduced "duplicative" hours where three experienced partners on the four-attorney team had expended 80% of the hours, and were often billing for the same tasks. *Id*. at *6.[6]  Here, Defendants' team was principally comprised of just one partner (Mr. Burke) and one associate (Ms. Everdell), with Ms. Everdell expending approximately 75% of the total hours. *See* Fees Motion at 9.  This division of labor reflects an efficient and non-duplicative approach to billing.  Finally, CoreCivic cites hours spent by Mr. Burke in two cases against the Santa Rosa Press Democrat, failing to mention that the plaintiff in both cases was a *pro se litigant*, not a major

---

[6] *See also AT&T Mobility LLC v. Yeager*, No. 2:13-CV-00007 KJM DB, 2018 WL 1567819, at *2 (E.D. Cal. Mar. 30, 2018) (reducing hours the court determined could not be sufficiently linked to the anti-SLAPP motion, where defendants had brought two other motions at the same time).

DAVIS WRIGHT TREMAINE LLP

public company represented by "[t]he best plaintiff-side defamation law firm in the United States."[7]

*See Smith v. Santa Rosa Press Democrat*, No. C 11-02411 SI, 2011 WL 7777108 (N.D. Cal. Dec. 19, 2011); *Smith v. Payne*, No. C 12-01732 DMR, 2013 WL 1615850 (N.D. Cal. Apr. 15, 2013).[8] Moreover, the complaints in those cases were only *four* and *seven* pages long, respectively (*see* Suppl. Burke Decl. Exs. I, J),[9] whereas CoreCivic's complaint here was *48* pages (*see* Dkt. 1).

In this case – and as detailed in Defendants Fees Motion and above – CoreCivic's own elaborate pleadings and burdensome litigation tactics necessitated a particularly time consuming defense. Having chosen to engage in tactics that drove up the defense costs, CoreCivic cannot now "be heard to complain about the time necessarily spent by the [opposing party] in response." *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) (citation omitted).

**Third**, CoreCivic protests the amount of preparation defense counsel allotted to oral argument on this motion. Pl. Opp. at 18. Yet argument on this motion lasted over *an hour* (*see* Dkt. 59), and covered such a scope of issues that two separate partner attorneys argued on CoreCivic's behalf. Defendants' side, by contrast, was argued solely by a sixth-year associate, who had every right and reason to thoroughly prepare. In fact, Defendants' winning result hinged on oral argument, during which this Court indicated had been inclined to rule in CoreCivic's favor before being convinced otherwise. *See* Suppl. Burke Decl., Ex. H (Nov. 19, 2020 Hearing Tr.) at 59:14-15.[10] This result would not have been possible without defense counsel's preparation.

**Fourth**, though CoreCivic does not dispute that Defendants are entitled to "fees on fees" in connection with this motion, it argues that such fees should not be awarded because Defendants did not submit detailed billing entries with its opening brief. CoreCivic thus asserts that, in order to

---

[7] https://clarelocke.com/

[8] CoreCivic also points to *Taylor v. Viacom*, a case litigated by different Davis Wright Tremaine attorneys, Pl. Opp. n.42, but fails to mention that the individual plaintiff in this case was represented by a solo practitioner who, in opposing Viacom's anti-SLAPP motion, had "not even presented argument as to the likelihood of success on the merits of his claims." *Taylor v. Viacom Inc.*, No. CV-17-3247-DMG (AFMx), 2018 WL 4959821, at *5 (C.D. Cal. June 5, 2018). Needless to say, this case required far fewer hours to defend.

[9] "[R]eply evidence [is] properly offered to respond to" claims of unreasonableness made in opposition to a fees motion. *Lissner v. U.S. Customs Serv.*, 56 F. App'x 330, 332 (9th Cir. 2003).

[10] CoreCivic cites to the oral argument transcript in its Opposition. *See* Pl. Opp. at 12 n.25.

recover, Defendants were obligated on December 18, 2020 (when the Fees Motion was filed) to submit detailed billings of their time through January 28, 2021 (the date of this Reply).  Of course, Defendants cannot itemize "fees on fees" billing before completing briefing on this Fees Motion.  And Defendants *did* provide evidence of fees incurred up until their opening brief in the form of an attorney declaration.  (*See* Burke Decl. (Dkt. 69-1) ¶ 21.)  *See also Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009) ("The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records.").  With this filing, Defendants have included appropriate supplemental documentation showing detailed billing entries associated with this Fees Motion, demonstrating that Defendants are entitled to recover a sought total of $45,650.70 in "fees on fees."  *See* Suppl. Burke Decl. ¶ 7, Ex. G.

**Fifth**, CoreCivic challenges a few of Defendants' paralegal fees as "clerical."  (Pl. Opp. at 19.)  But excludable "clerical" tasks include those that could be done by any staff, including "the filing of pleadings and the travel time associated therewith," *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993), or the organization of case files.  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).  The tasks performed by Ms. Nurrenbern, a seasoned paralegal, here involved substantive contributions to case filings – including finding appropriate exhibits to support motion practice, Ex. F at 14, and using legal expertise to create topic-specific files of cases for attorneys to review for oral argument.  Ex. F at 18.[11]  This work was efficiently performed and is recoverable.

## B.   Defense Counsel's Market Rates are Reasonable

Defendants submitted ample evidence supporting their counsel's rates, including detailed billing records and descriptions of the qualifications of attorneys who worked on this lawsuit (Burke Decl. ¶¶ 4-12 and Exs. A-D), as well as a declaration from a leading media attorney who confirmed that the rates charged are at or below the range charged by media lawyers with similar experience at other private firms in the San Francisco legal market.  (Dkt. 69-8, ¶ 5.)  Defendants

---

[11] CoreCivic also claims Defendants' paralegal entries were improperly "block billed."  (Pl. Opp. at 19.)  This is incorrect – each task billed by Ms. Nurrenbern included a corresponding hours total. *See, e.g.*, Ex. F at 14.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:20-cv-03792-WHA

DAVIS WRIGHT TREMAINE LLP

also cited numerous recent cases where courts awarded fees at similar or higher billing rates than those sought here.  (*See* Fees Mot. at 11; Burke Decl. ¶ 12.)  CoreCivic does not even attempt to challenge this evidence, and thus fails to meet its burden of justifying any reduction in the hourly rate sought.  *See Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1010 (2013).

Instead, CoreCivic argues that Defendants can only recover for fees they "actually paid," and even go so far as to suggest that Defendants' Fees Motion should be denied *entirely* because it seeks recovery at market rates.  Pl. Opp. at 21.  Yet, as usual, CoreCivic's contention relies upon irrelevant and improper caselaw, and ignores clear governing authority.  As the California Supreme Court has held, attorneys' fees under the anti-SLAPP statute are calculated using the "lodestar" method, which evaluates "the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (citation omitted).  Under the lodestar approach, courts determine counsel's "reasonable" hourly rate, and "[t]his standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, [or] represent the client on a straight contingent fee basis . . . ."  *Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 651 (2012).  *See also Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (2001), *as modified* (Apr. 5, 2001) (the anti-SLAPP Statute "can and should be construed to permit recovery of attorney fees that are accrued by outside counsel representing a party on a partial pro bono basis, where counsel has not waived the right to seek recovery of the attorney fees from third parties, such as insurers, but only from the client").  Far from contradicting the anti-SLAPP statute, the California Supreme Court confirmed that application of the lodestar approach serves its legislative purpose by "encourage[ing] private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement."  *Ketchum*, 24 Cal. 4th at 1131.  *See Chacon v. Litke*, 181 Cal. App. 4th 1234, 1260 (2010) (applying *Ketchum* and affirming lower court award based on $350 "reasonable hourly rate," though counsel had actually charged its client $300 per hour); *Indep. Living Ctr. of S. California v. Kent*, No. 2:08-CV-03315-CAS, 2020 WL 418947, at *5 (C.D. Cal. Jan. 24, 2020) (rejecting argument that fees

DAVIS WRIGHT TREMAINE LLP

award should be measured by discounted rates paid, since those discounts "were based upon the possibility for a *contingent* recovery" in the form of a market rate fees award).

In arguing to the contrary, CoreCivic ignores *Ketchum* (though it relies upon that case elsewhere in its Opposition), and instead cites a string of lower court cases which – it conveniently obscures – each concerned whether an attorney can recover fees for litigating a case *in propria persona. See Trope v. Katz*, 11 Cal. 4th 274, 292 (1995) (declining to award attorneys' fees under Civ. Code, § 1717 to law firm defendant that represented itself); *Witte v. Kaufman*, 141 Cal. App. 4th 1201, 1208  (2006) (same, in an anti-SLAPP case); *Soukup v. Stock*, 118 Cal. App. 4th 1490, 15 Cal. Rptr. 3d 303, 311 (Ct. App.), *as modified on denial of reh'g* (June 21, 2004), *rev'd sub nom. Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260 (2006) (same); *Ramona Unified Sch. Dist. v. Tsiknas*, 135 Cal. App. 4th 510, 524 (2005) (holding that attorney defendant *could* recover fees for legal services provided to co-defendants).[12]  These cases have nothing to do with calculating fees for outside counsel using the lodestar method.  The question here is not what rate was paid, but what rate was reasonable.  Defendants offered ample evidence that their market rates are reasonable, and CoreCivic has failed to present any evidence to the contrary.

## **CONCLUSION**

For the foregoing reasons, Defendants ask the Court to award them $165,572.10 in fees in connection with their anti-SLAPP Motion, an additional $45,650.70 in fees in connection with this Fees Motion, and $310 in costs.

---

[12] The sole exception is a **depublished** opinion CoreCivic cites (Pl. Opp. at 22), *Stafford v. Sipper*, 76 Cal. Rptr. 2d 723, 726 (Ct. App. 1998), *ordered not to be officially published* (Nov. 4, 1998). This case predated *Ketchum*, and moreover, citing it violated California rules.  *See* California Rules of Court Rule 8.115 (unpublished opinions "must not be cited or relied on by a court or a party in any other action"); *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.8 (9th Cir. 2005) (declining to consider an unpublished California state court opinion, since under the California Rules of Court "an unpublished opinion cannot be cited to or relied on by other courts").

15

DAVIS WRIGHT TREMAINE LLP

1 | Dated:  January 28, 2021

Respectfully submitted,

2 | DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
3 | ABIGAIL B. EVERDELL

4

By:   /s/ *Thomas R. Burke*
5 |      THOMAS R. BURKE

6 | Attorneys for Defendants Candide Group, LLC
and Morgan Simon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16