UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORECIVIC INC,

        Plaintiff,

  v.

CANDIDE GROUP LLC, et al.,

        Defendants.

No. C–20–03792–WHA

**ORDER GRANTING ATTORNEY'S FEES BUT HOLDING IN ABEYANCE FINAL CALCULATION**

    This is a defense motion for attorney's fees under California's anti-SLAPP statute after the complaint for defamation lost at the pleading stage. The main issue is the extent to which, if at all, a state provision on attorney's fees should be honored rather than following the different standards required by Rule 11.

    Plaintiff CoreCivic Inc. runs private prisons and detention centers. Its role in detaining immigrants drew public criticism from defendant Morgan Simon and her Candide Group LLC, a firm that promotes socially-responsible investing. As a senior contributor to *Forbes* magazine, she published online content praising banks that cut ties with private prison operators. Mixing reporting, advocacy, and self-promotion, her articles focused on the role of activist groups, like the #FamiliesBelongTogether movement and her own investment firm, in the push for banks to stop investing in the private prison industry. Simon's articles named CoreCivic in the controversy surrounding the separation of family members at the border.

In this civil action, CoreCivic brought defamation claims against Simon and Candide. A "special motion" to strike the complaint under California's anti-SLAPP statute ensued. Simon's criticism of CoreCivic, however, turned out to be true (Dkt. 67 at 21–22), so a prior order dismissed the claims on the merits against Simon and Candide without leave to amend (Dkt. 61).

Defendants now move for $165,572.10 in attorney's fees for their "special motion," plus $45,650.70 in fees for this motion, plus $310 in costs. CoreCivic replies that the state anti-SLAPP statute does not apply to our case for two reasons: (1) the state anti-SLAPP statute cannot apply in federal court because it impermissibly conflicts with Federal Rules of Civil Procedure 11 and 12 and *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), and (2) the commercial purpose of Simon's statements excluded them from California's anti-SLAPP statute.

\*     \*     \*

California's anti-SLAPP statute protects defendants from litigation designed to quell public participation by "shift[ing] burdens of proof and fees onto the lawsuit filer to compensate the prevailing defendant for the undue burden of defending against litigation designed to chill the exercise of free speech . . . ." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 143 (2019) (citations and quotations omitted).

Section 425.17 of the California Code of Civil Procedure exempts certain kinds of defendants from bringing a special motion to strike, namely commercial defendants whose speech was made in the context of comparative advertising and defendants against whom a plaintiff brought a lawsuit in the public interest. However, even if the defendant is commercial under Section 425.17(b), the defendant is still protected under the anti-SLAPP statute if he or she is a reporter, researcher, nonprofit, or creator or publisher of "dramatic, literary, musical, political, or artistic work" under Section 425.17(d).

Once a defendant establishes eligibility for anti-SLAPP protections under Section 425.17, he or she must still show that the speech or conduct that prompted the lawsuit is the kind of

2

public participation protected by the anti-SLAPP statute under Section 425.16.  Section 425.16(b)(1) allows a "special motion" to strike when a plaintiff brings a "cause of action against a person arising from any act . . . in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."

Once a defendant establishes that the cause of action implicates a right of petition or free speech in connection with a public issue, the burden shifts under Section 425.16(b)(1) to the plaintiff to establish a "probability" that the plaintiff will prevail on the claim.  If the plaintiff fails to meet the probability requirement, then the defendant prevails and is "entitled to recover his or her attorney's fees and costs" under Section 425.16(c)(1).

Here, CoreCivic argues that Simon's statements promoted Candide and benefitted it commercially, exempting them from anti-SLAPP protections.  Even though Simon was not a salaried staff reporter for *Forbes* magazine, her role as a senior contributor qualified her as "person connected with" a "periodical publication" under Section 425.17(d), so her statements are not exempted as "commercial."

Under Section 425.16 subsections (e)(3) and (e)(4), Simon's statements were also the kind of public participation the anti-SLAPP statute was meant to protect — conduct or speech that contributes to discourse on "a public issue or an issue of public interest."  There must be a "functional relationship" or "some degree of closeness" between the statements and the public issue for them to count as participation, in contrast to statements concerning "a narrow, largely private dispute."  *DoubleVerify*, 7 Cal. 5th 141–150.  Simon's articles engaged with investors and activists using interviews, links to articles and reports, and "#FamiliesBelongTogether" to connect her work to the larger conversation about immigration and private prisons.  Simon's conduct and statements demonstrate this "degree of closeness" by addressing contested public issues including the impact of immigration policy during the Trump administration and the activist response to investment into privately-owned detention facilities.

The foregoing would be clear cut in California state court.  But we are in federal court.  And, that brings up the problem of *Shady Grove*.

3

In 2010, the United States Supreme Court answered the question: can a plaintiff asserting claims under state law maintain a class action in federal court under Rule 23 despite a general state law prohibiting class actions unless specifically authorized by the particular law giving rise to the claim. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 396, n.1 (2010), *citing* N.Y. Civ. Prac. Law Ann. § 901. In deciding *Shady Grove*, the Supreme Court laid out the following "framework for [its] decision":

> We must first determine whether Rule 23 answers the question in dispute. If it does, it governs — New York's law notwithstanding — unless it exceeds statutory authorization or Congress's rulemaking power. We do not wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid.

*Id*. at 398. In applying the above "answers the question in dispute" standard, the Supreme Court held:

> Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements. Both [state class action] subsections undeniably *answer the same question* as Rule 23: whether a class action may proceed for a given suit.

*Id*. at 401 (emphasis added). In other words, where Rule 23 "provide[d] a one-size-fits-all formula for deciding the class-action question," the Supreme Court held that the federal rule must apply. *Id*. at 399.

Since then, various federal circuits have considered the extent to which state anti-SLAPP statutes must yield to our federal rules under *Shady Grove*.[*] As for California's anti-SLAPP law, the Second Circuit recently held that it has no role in federal court, given *Shady Grove*.

---

[*] For decisions limiting the application of state anti-SLAPP statutes in federal court, see *La Liberte v. Reid*, 966 F.3d 79, 86–88 (2d Cir. 2020) (California anti-SLAPP statute)*;Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019), *as revised* (Aug. 29, 2019) (Texas anti-SLAPP); *Los Lobos Renewable Power, LLC v. Americulture*, Inc, 885 F.3d 659, 673 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 591 (2018) (New Mexico anti-SLAPP); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018) (Georgia anti-SLAPP); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (D.C. anti-SLAPP).

Our own court of appeals, however, has not yet expressly decided how *Shady Grove* applies to a state anti-SLAPP statute. In a most interesting exchange of views, four circuit judges disagreed with four other circuit judges on this issue in connection with a petition for rehearing en banc. *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013).

The original panel decision in *Makaeff* held that Trump University ranked as a "public figure" for the purposes of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1969), and therefore Trump University's defamation claim against a former student should have been stricken under California's anti-SLAPP statute as lacking a reasonable probability of prevailing on the merits (due to Trump University's anticipated difficulty in proving "actual malice" by the former student). The panel decision omitted any mention of *Shady Grove*. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 271 (9th Cir. 2013). Judges Kozinski and Paez concurred but invited our circuit as a whole to revisit its precedent regarding anti-SLAPP statutes in light of *Shady Grove*.

Accompanying the denial for the petition for rehearing en banc, Judges Watford, Kozinski, Paez, and Bea would have held:

> Viewed through *Shady Grove*'s lens, California's anti-SLAPP statute conflicts with Federal Rules 12 and 56. Taken together, those rules establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court. . . . California's anti-SLAPP statute impermissibly supplements the Federal Rules' criteria for pre-trial dismissal of an action.
>
> Rule 12 provides the sole means of challenging the legal sufficiency of a claim before discovery commences. To survive a Rule 12(b)(6) motion to dismiss — the closest Rule 12 analog to an anti-SLAPP motion to strike — the plaintiff must allege facts stating a claim that is plausible on its face. This standard does not impose a probability requirement at the pleading stage. Indeed, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . .

736 F.3d at 1188–89. In sharp contrast, Judges Wardlaw, Callahan, Fletcher and Gould would have held:

> The question asked by Rule 12 is whether the plaintiff has stated a claim that is plausible on its face and upon which relief can be granted. California's anti-SLAPP statute does not attempt to answer this question; instead, California Code of Civil Procedure

5

> [Section] 430.10, the state statutory analog of Rule 12, does. That the California legislature enacted both an analog to Rule 12 and, additionally, an anti-SLAPP statute is strong evidence that the provisions are intended to serve different purposes and control different spheres. Moreover, the anti-SLAPP statute asks an entirely different question: whether the claims rest on the SLAPP defendant's protected First Amendment activity and whether the plaintiff can meet the substantive requirements California has created to protect such activity from strategic, retaliatory lawsuits.
>
> Furthermore, the contention that California Code of Civil Procedure [Section] 425.16 imposes a probability requirement at the pleading stage ignores California Supreme Court precedent. Although [Section] 425.16 asks courts to determine whether the plaintiff has established that there is a *probability* that the plaintiff will prevail on the claim, the California Supreme Court has held that . . . the Legislature did not intend that a court would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation that poses a potential chilling effect on speech-related activities.

*Id*. at 1182 (quotations and citations omitted, emphasis in original).

None of this commentary was in a binding decision. Nor did commentary address the specific anti-SLAPP provision here at issue — the automatic right to attorney's fees. Instead, the commentary addressed the procedural steps for rulings on motions to strike. What this four-to-four split showcased was that the relationship between California's anti-SLAPP statute and *Shady Grove* remains an *expressly* undecided issue in our circuit, including as to attorney's fees.

After this exchange, however, a later panel decision in a different case arguably addressed the question in the four-to-four split, again without mentioning *Shady Grove*. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). The word "arguably" must be used because, to repeat, *Shady Grove* was never mentioned in the opinion. In fact, *Shady Grove* also went unmentioned in the appellate briefs, which likely explains why it went unmentioned in the opinion. *Shady Grove* surfaced only in the losing side's petition for certiorari. Nevertheless, the *Planned Parenthood* opinion did reference some of the same concepts as *Shady Grove*, as

illustrated in this excerpt from the holding dealing with how anti-SLAPP "special motions to strike" should be handled in federal court:

> Echoing the point we made earlier in adopting the rule of [*Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239 (9th Cir. 2012)]., we hold that, on the one hand, when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.  And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply.  But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court.  A contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court.  In this context, if there is a contest between a state procedural rule and the federal rules, the federal rules of procedure will prevail.  The broad command of *Erie* was therefore identical to that of the Enabling Act:  federal courts are to apply state substantive law and federal procedural law.  Procedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure.  We conclude that the district court correctly applied a Rule 12(b)(6) standard to Defendants' Motion to Strike challenging the legal sufficiency of Plaintiffs' complaint, and the district court did not err in declining to evaluate the factual sufficiency of the complaint at the pleading stage.

*Id*. at 834–35 (citations and quotations omitted).

Given that our own court of appeals has blessed application of California's anti-SLAPP statute, at least to the extent indicated in the preceding quote, it would be impermissible for a district court to follow verbatim the Second Circuit's opinion which invalidated the entirety of the California anti-SLAPP statute in federal court.  *La Liberte,* 966 F.3d 79.  In effect, our own Ninth Circuit has re-written the California anti-SLAPP statute to harmonize it with Rules 12 and 56 and has effectively eliminated the probability of success language from the statute.  The Second Circuit did no re-writing and no harmonizing in striking down California's anti-SLAPP law.

At our attorney's fees hearing, counsel asked the Court to elaborate on the extent to which its dismissal was based on Rule 12, Rule 56, or the California anti-SLAPP statute. Here is the answer.  The movant had moved under the California anti-SLAPP law but the

Court was obliged to treat it as an Rule 12 motion and did, as per *Planned Parenthood*. At the lengthy hearing on the motion to strike an important admission emerged that was not squarely presented in the four corners of the complaint, namely that CoreCivic had incarcerated the parents after their children had been taken from them. In light of this admission, the Court dismissed the case inasmuch as the alleged defamation was true: CoreCivic admitted that it had, indeed, facilitated the family-separation policy by holding parents of the separated families (even though it had not held the children). Ordinarily on a motion to dismiss, the district court judge should not go beyond the four corners of the complaint, but there are exceptions — one is when a plaintiff freely admits a fact at the hearing. "A litigation position . . . conveyed to a court becomes binding in any forum in which the same controversy arises," including judicial admissions during oral argument. *Am. C.L. Union of Nevada v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012).

\*          \*          \*

Even though we are bound to follow the actual holding of *Planned Parenthood*, as quoted above, there were two references to Section 425.16(c), the attorney's fees provision, but they arose in a different passage that merely recited the long history of the development of case law. In its actual holding, *Planned Parenthood* did not refer to Section 425.16(c).

To repeat, Section 425.16(c) of the California Code of Civil Procedure provides:

> Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

This provision is arguably in conflict with Rule 11 because the attorney's fees provision of Section 425.16(c) conflicts with Rule 11's standard. Under Rule 11, an award of attorney's fees is not automatic. Under Section 425.16(c) an award is automatic. Put differently, both

Rule 11 and Section 425.16(c) address when to award fees for abusive litigation tactics, but employ different standards.

Prior to *Shady Grove*, our circuit law had plainly blessed the attorney's fees provision above quoted. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001). CoreCivic is correct that *Metabolife* predated *Shady Grove*. But CoreCivic is incorrect that the attorney's fees provision has no place in federal court.

This order holds that Section 425.16(c) of the California Code of Civil Procedure establishes a *substantive* right to recover attorney's fees when defending against a defamation action under California law where the defamation alleged touches on a public issue and the alleged defamer prevails. Put differently, Section 425.16 establishes a cause of action under state law to recover attorney's fees. The recovery is automatic for an alleged defamer who prevails where the speech touches upon a public issue. *Cf. Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013). In other contexts, our court of appeals has regularly allowed attorney's fees recovery under state law without pausing over Rule 11, before and after *Shady Grove*. *See, e.g., Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) (civil rights); *Wilson v. Tesla, Inc.*, 833 F. App'x 59, 61 (9th Cir. 2020) (unpublished) (wage and hour); *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837–38 (9th Cir. 2001) (bankruptcy); *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995) (age discrimination); *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2006) (trade secret).

Specifically with regard to California's anti-SLAPP statute, our court of appeals has held that attorney's fees are recoverable and referred to the anti-SLAPP statute as articulating "substantive state interests." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971–73 (9th Cir.1999). Admittedly this decision predated *Shady Grove* but once a state attorney's fees provision is deemed *substantive*, not procedural, there is no conflict with Rule 11.

\*         \*         \*

In view of the possibility that our court of appeals may disagree and hold that fees should not be allowed in this case, and in view of the bone-crushing labor required to vet the large amount of fees requested, we merely observe that fees will be determined after all appeals are exhausted. The Court asks both sides to so stipulate.

That being said, this order offers two observations.

*First*, defense counsel's hourly rate is inflated way beyond the amount charged to the client. The anti-SLAPP attorney's fee provision protects defendants from shouldering the costs of meritless litigation so fees should be limited to what actually "compensate[s] a defendant for the expense of responding to a SLAPP suit," and not result in a bonus for attorneys. *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014); *see also*, *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1321 (2008). It has been held in multiple contexts that "billing judgment" dictates that:

> [T]he prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission . . . Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (emphasis in original); *see also Roberts v. Comm'r of Soc. Sec.*, 522 F. App'x 387, 388 (9th Cir. 2013); *Harman v. City & Cty. of San Francisco*, 136 Cal. App. 4th 1279, 1310 (2006).

*Second*, defense counsel spent too long on the motion to strike, especially in light of the experience and expertise of the attorneys which should have allowed them to make quicker work of this matter. Especially where hourly fees are high, there is "an expectation that [counsel] will complete tasks efficiently and that its more senior attorneys will limit their involvement to tasks requiring their level of expertise." *Wynn v. Chanos*, No. 14–CV–04329–WHO, 2015 WL 3832561, at \*3 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017); *see also Hernandez v. Grullense*, No. 12–CV–03257–WHO, 2014 WL 1724356, at \*11 (N.D. Cal. Apr. 30, 2014), *appeal dismissed* (July 18, 2014). Other courts have determined a

reasonable time expenditure for an anti-SLAPP motion to be between 40 and 75 hours, not 407.9 hours as here. *See Hyan v. Liberty Surplus Ins. Corp.*, No. CV142004JVSFFMX, 2020 WL 5092448, at *3 (C.D. Cal. Jan. 15, 2020); *Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, No. CIV. S–14–0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014).

Final judgment has been entered for Simon and Candide (Dkt. 61). This order holds that Simon is entitled to attorney's fees but holds in abeyance the final calculation of fees pending resolution of the current appeal. Please submit the stipulation to carry out this procedure.

**IT IS SO ORDERED.**

Dated: April 6, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE