UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORECIVIC, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CANDIDE GROUP, LLC, and<br>MORGAN SIMON,<br><br>　　　　Defendants. | No. C 20-03792 WHA<br><br>**ORDER RE MOTION TO STRIKE** |

## INTRODUCTION

In this diversity action, plaintiff accuses defendants of defamation. Defendants filed an anti-SLAPP special motion to strike all claims. A prior order granted the motion, which plaintiff appealed. Our court of appeals affirmed all findings but remanded for this district court to consider unresolved issues. For the reasons that follow, as to the remaining issues, the motion is **GRANTED**. To the extent stated, defendants' motion for attorney's fees is **GRANTED**.

## STATEMENT

Plaintiff CoreCivic, Inc., runs private prisons and detention centers. Its role in detaining immigrants drew public criticism from defendants Morgan Simon and her Candide Group, LLC, a firm that promotes socially-responsible investing. As a senior contributor to *Forbes* magazine, she published online content praising banks that cut ties with private prison operators. Mixing reporting, advocacy, and self-promotion, her articles focused on the role of activist groups, like the #FamiliesBelongTogether movement and her own investment firm, in

the push for banks to stop investing in the private prison industry. Simon's articles named CoreCivic in the controversy surrounding the separation of family members at the border.

CoreCivic brought defamation claims against Simon and Candide Group for statements accusing CoreCivic of (a) detaining immigrants at the border and (b) lobbying for more punitive criminal and immigration laws. A special motion to strike the complaint under California's anti-SLAPP statute ensued. A prior order held that the anti-SLAPP statute does not conflict with the Federal Rules of Civil Procedure and applies in federal court. That same order dismissed the claims on the merits against Simon and Candide Group without leave to amend because Simon's criticism of CoreCivic regarding the detention of immigrants turned out to be true. Another order found that Simon and Candide Group were entitled to attorney's fees for prevailing on their anti-SLAPP motion. But, because CoreCivic had appealed the order of dismissal, the final calculation of attorney's fees was held in abeyance until after resolution of the appeal.

Our court of appeals affirmed that the anti-SLAPP statute applies in federal court. It also affirmed the dismissal of the defamation claims with respect to statements connecting CoreCivic to the detention of immigrants. But, because the prior order did not consider the defamation claims with respect to statements about CoreCivic's lobbying practices, our court of appeals remanded for us to resolve the remaining issues.

CoreCivic takes issue with the following statements regarding its purported lobbying:

> GEO Group and CoreCivic have a long history of profiting from mass incarceration: they make money when beds are filled, justly or unjustly, which is why they've spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws.

> Given [GEO Group and CoreCivic's] business model depends on keeping a consistent number of people incarcerated, it's been speculated and critiqued that this is why GEO Group and CoreCivic have spent $25M on lobbying over the past three decades to push for harsher criminal justice and immigration laws.

> A cycle emerges when one follows the money in banks, banks lend that money out to the private prison industry, the private prison industry uses that financing for their day to day work including lobbying, which successfully

2

> funnels more detainees into their facilities, and banks reap
> a payoff from their loans.

(Compl. ¶¶ 71–73). The parties already briefed and held oral argument on the merits with respect to these statements. They also provided supplemental briefing after remand. So this order resolves the remaining issues without another hearing.

## ANALYSIS

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

The statute protects four categories of acts, including:

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. §§ 425.16(b)(1), 425.16(e). To prevail on their motion, defendants must make a prima facie showing that the claims arise from an act specified in Section 425.16(e). Thereafter, the burden shifts to plaintiff to establish a reasonable probability of prevailing on the claims to survive dismissal. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021).

"At the second step, if, as here, the 'anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the [FRCP] 12(b)(6) standard and consider whether a claim is properly stated.' If the special motion succeeds, the defendant is entitled to attorney's fees and costs." *CoreCivic, Inc. v. Candide Grp., LLC*, No. 20-17285, 2022 WL 3724307, at *3 (9th Cir. Aug. 30, 2022) (citations omitted).

3

### 1. DEFENDANTS SATISFY THEIR BURDEN.

The prior order on defendants' anti-SLAPP motion found that the defamation and defamation by implication claims arise from acts protected under Sections 425.16(e)(3) and (e)(4). That finding applies equally to the defamation claims with respect to Simon's statements about lobbying. Simon "contributed to the public debate" regarding immigration policy — an issue of significant public concern — by discussing CoreCivic's purported lobbying for more punitive immigration laws. In context, this becomes clear. Her "audience" is members of the public who subscribe to a popular magazine. Simon, the "speaker," is a social justice activist. And, the "purpose" of her statements is to convey what she believes to be the negative impact that private prisons have on immigration policy. Her statements "'serve[] the interests' of preventing" the enactment of abusive immigration policies. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 150–51 (2019) (citation omitted).

In addition, as the prior order found, the exemption under Section 425.17(c) does not apply here. Specifically, Section 425.17(d)(2) applies here and thwarts the exemption because this action is "against [a] person . . . based upon the creation . . . of . . . article[s] published in a newspaper or magazine of general circulation." Whether the statements in the articles concern immigrant detention or lobbying does not change that conclusion. Thus, the defamation claims regarding the lobbying statements are subject to the anti-SLAPP statute.

Defendants have, therefore, satisfied their burden under Section 425.16(b)(1).

### 2. PLAINTIFF FAILS TO SATISFY ITS BURDEN.

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "'The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.' The defamatory statement must specifically refer to, or be 'of and concerning,' the plaintiff." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) (internal quotation marks and citations omitted).

4

1  The threshold question in a defamation claim is:

2  "'[W]hether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact.' If the answer is no, the claim is foreclosed by the First Amendment." This is because "'pure opinion' — that is, statements that do not imply facts capable of being proved true or false" — is protected.

To determine whether a statement implies a factual assertion, the court must examine the "totality of the circumstances" in which the statement was made. First, the court looks at "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Second, the court considers the "specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." Finally, the court considers whether the "statement itself is sufficiently factual to be susceptible of being proved true or false."

"Whether an allegedly defamatory statement is one of opinion or fact is a question of law." But "if a statement is 'susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury.'"

*Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1048–49 (S.D. Cal. 2020) (Judge Cynthia Bashant), *aff'd*, 8 F.4th 1148 (9th Cir. 2021).

Here, Simon's statements regarding lobbying are opinion and, therefore, protected under the First Amendment. *First*, this order considers the broad context of Simon's statements. To an extent, the statements bear the "'formality and polish typically found in documents in which a reader would expect to find facts,'" supporting that they are "'nonactionable opinion.'" But they more resemble opinion. As Simon remarks, "it's been speculated and critiqued" that CoreCivic lobbies for more punitive immigration laws (Dkt. No. 1-1, Exh. G). And, she opines that CoreCivic "unjustly" makes money from incarceration (*id.*, Exh. D). Moreover, *Forbes* is a forum where articles generally include "'subjective opinions of the author[s] . . . .'" For example, articles in *Forbes*' "Money" section — where Simon's articles were published — generally provide "'analysis or insight'" regarding economic trends and finance management. Additionally, Simon's articles "fairly describe[] the general events involved and offer[] [her] personal perspective about some . . . ambiguities and disputed facts.'" Indeed, one of her articles closes with the following perspective: "If capital and

United States District Court
Northern District of California

activists agree that private prisons are bad business, their days may indeed be numbered" (Dkt. No. 1-1, Exh. B). Finally, the "general tenor" of Simon's articles sounds in opinion. Her articles are critical of the private prison system and highlight the "growing concern over family detention" at the borders (Dkt. No. 1-1, Exh. D). In fact, she calls defunding of private prisons "a big win for the world of corporate accountability . . ." (*ibid.*). The broad context, therefore, supports that the lobbying statements are opinion. *Herring*, 445 F. Supp. 3d at 1049–50 (citations omitted).

*Second*, this order considers the specific context and content of Simon's statements. Because Simon is a social activist, the "reasonable expectations of [Simon's] audience" would be that her statements contain subjective analysis and insight regarding immigration policy and the private prison system. But her articles do not use "'loose, figurative, or hyperbolic'" language that "tends to negate the impression that [the] statement[s] contain[] assertion[s] of verifiable fact." Thus, the specific context neither aligns nor conflicts with a finding that the statements are opinion. *Id.* at 1051 (citations omitted).

*Third*, this order considers whether the statements are "sufficiently factual to be susceptible of being proved true or false." *Id.* at 1049. Simon's statements provide that CoreCivic lobbies for harsher criminal justice and immigration laws. But that assertion is not capable of objective verification. Whether one law is harsher than another *can be* a straightforward determination — most would agree that increasing the minimum sentence for a crime is to make the law for that crime harsher. But, for more extensive changes to the law, that determination would require thorough analysis of the prior and the new law. Individuals could have different analyses and reach different conclusions. A law could even turn out to be more punitive in practice than it seems on paper — such as a facially neutral law that has a disproportionate, adverse impact on a protected trait. *See, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993). Thus, the third consideration supports that Simon's statements are opinion.

Based on the foregoing, the "'totality of the circumstances'" supports that the lobbying statements are nonactionable opinion. *Herring*, 445 F. Supp. 3d at 1049 (citation omitted).

6

Plaintiff has, therefore, failed to satisfy its burden to show a reasonable probability of succeeding on its defamation claims. Because defendants have satisfied their burden under Section 425.16(b)(1) and plaintiff has not, defendants' motion to strike is **GRANTED**.

### 3. ATTORNEY'S FEES.

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees . . . ." *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). Regarding calculation of fees, the California Supreme Court has stated:

> [A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the "careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case." . . . [T]rial courts must carefully review attorney documentation of hours expended; "padding" in the form of inefficient or duplicative efforts is not subject to compensation.

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1131–32 (2001) (citations omitted). The trial judge must use the "prevailing rate in the community for similar work" to calculate fees. *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 432 (2016). Generally, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

"To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." "The 'experienced trial judge is the best judge of the value of professional services rendered in his court.'" *Ketchum*, 24 Cal. 4th at 1132, 1138 (citations omitted).

Here, defendants have prevailed on all issues relating to their motion to strike. They are, therefore, entitled to attorney's fees. Now, this order must consider the reasonableness of the requested fees.

*First*, this order considers defense counsel's hourly rates. Defense counsel provide hourly rates of $810, $555, $430, and $240 for a partner (30 years' experience), two associates (eight and five years' experience), and a paralegal, respectively (Burke Decl. ¶ 5). A review of SLAPP actions in this district shows these rates are on the high end for attorneys of similar experience and for paralegals. *See Mullan v. Daniels*, No. 19-CV-04058-KAW, 2021 WL

4932726, at *3 (N.D. Cal. Apr. 7, 2021) (Judge Kandis A. Westmore); *League of United Latin Am. Citizens Inc. v. Eureste*, No. 13-CV-04725-JSC, 2014 WL 5473560, at *2 (N.D. Cal. Oct. 28, 2014) (Judge Jacquelin Corley). Yet some courts in this district have found similar rates reasonable. *See Jiang v. KNTV Television LLC*, No. 21-CV-01293-LB, 2021 WL 4710717 (N.D. Cal. Oct. 8, 2021) (Judge Laurel Beeler); *Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561 (N.D. Cal. June 19, 2015) (Judge William Orrick).

Plaintiff argues, however, that defense counsel may not use an hourly rate (to calculate fees) that is greater than the hourly rate they charged their clients' insurers. This order agrees. Defense counsel declare they agreed to heavily discounted hourly rates with defendants' insurance companies ($400, $325, $325, and $115, respectively) (Burke Decl. ¶ 14). Defense counsel agreed on condition that "any fee recovery under the anti-SLAPP statute would be earmarked to make up the difference between those discounted rates and counsel's standard rates" (Br. 10 n. 6; *see* Burke Decl. ¶¶ 13–15).

But the anti-SLAPP statute protects defendants from shouldering the cost of meritless litigation, so fees should be limited to what actually "compensate[s] a defendant for the expense of responding to a SLAPP suit." Attorneys should not receive a bonus. *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014); *see Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1321 (2008). Moreover, "billing judgment" dictates that:

> counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. . . . "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (emphasis in original) (citation omitted); *see Roberts v. Comm'r of Soc. Sec.*, 522 F. App'x 387, 388 (9th Cir. 2013); *Harman v. City & Cnty. of San Francisco*, 136 Cal. App. 4th 1279, 1310 (2006). Thus, the rates that defense counsel actually charged shall be used to calculate attorney's fees.

*Second*, this order considers defense counsel's total hours spent to respond to the SLAPP suit. Defense counsel purports to have spent: 63.7 hours on research for the anti-SLAPP

motion; 91.7 hours drafting the motion; 37.5 hours drafting the reply; 43.5 hours preparing for and attending the motion hearing; 20.1 hours responding to plaintiff's administrative motion relating to the anti-SLAPP motion; and 1.7 hours "attending to the parties' stipulating regarding briefing" on the motion (Burke Decl. ¶ 17). The declaration, however, omits 55.1 hours that defense counsel included in its fees chart (Burke Decl., Exh. 7). Defense counsel also purportedly spent 94.6 hours to move, reply, and negotiate for attorney's fees (Burke Suppl. Decl. ¶ 3). Altogether, defense counsel seek 407.9 hours' worth of fees.

This order finds such time expenditure ridiculous. "The district court . . . should exclude from [the] initial fee calculation hours that were not 'reasonably expended,' . . . including hours that are excessive, redundant, or otherwise unnecessary." "There is no precise rule or formula [to make] these determinations." *Hensley*, 461 U.S. at 434, 436.

This is a straightforward defamation action. Plaintiff pleaded defamation and defamation by implication for only two categories of statements. One can read the handful of articles that contain the statements in minutes. The parties did not conduct discovery. And, although defense counsel prevailed, the litigation did not require extraordinary skill. In addition, defense counsel have provided numerous vague and duplicative descriptions of tasks that are indicative of padding. For example, defense counsel expended over 30 hours to "outline" their analysis in the anti-SLAPP motion. And, they spent over 40 hours revising the motion (Burke Decl., Exh. F). Based on these factors, this order finds that this "particular award [would be] excessive." *Ketchum*, 24 Cal. 4th at 1138.

Taking first the anti-SLAPP motion, reply, and hearing preparation, defense counsel spent 236.4 hours in total. Other courts, however, have determined a reasonable time expenditure for an anti-SLAPP motion to be between 40 and 75 hours. *See Hyan v. Liberty Surplus Ins. Corp.*, No. CV142004JVSFFMX, 2020 WL 5092448, at *3 (C.D. Cal. Jan. 15, 2020) (Judge James Selna); *Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, No. CIV. S-14-0666 KJM, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014) (Judge Kimberly Mueller). Especially considering that the partner holds himself out as an expert in anti-SLAPP litigation, 236.4 hours is grossly inefficient (*see* Br. 9). Based on this district court's own

experience as well as other comparable decisions, a reasonable time to spend on the motion, reply, and hearing preparation is 90 hours. *See Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242, 1249 (2006); *Plevin v. City & Cnty. of San Francisco*, No. 11-CV-2359 MEJ, 2013 WL 2153660, at *8 (N.D. Cal. May 16, 2013) (Judge Maria-Elena James); *Smith v. Payne*, No. C 12-01732 DMR, 2013 WL 1615850, at *3 (N.D. Cal. Apr. 15, 2013) (Judge Donna Ryu).[1]

As to the attorney's fees motion, reply, and negotiations, this order finds 94.6 hours excessive and inefficient. In fact, in another action dismissed on anti-SLAPP grounds, a court in this district awarded our defense counsel fees for "12 hours of work in connection with the . . . fee motion." *Smith*, 2013 WL 1615850, at *3. Although, here, defense counsel had to contend with two merits arguments in their reply for attorney's fees, defense counsel had already addressed the same arguments in their reply supporting the motion to strike. And, although plaintiff made a number of arguments addressing defense counsel's time expenditure and rates, such counterarguments are to be expected for any attorney's fees motion. This district court finds 30 hours reasonable for the attorney's fees motion, reply, and negotiations.

As to the time defense counsel spent responding to plaintiff's administrative motion, such time is compensable. Plaintiff brought the administrative motion, in part, "to confirm that . . . defendants' motion to strike is procedurally defaulted, is untimely under settled precedent, and it is denied" (Dkt. No. 43 at 3). After defense counsel responded and plaintiff replied, an order denied the motion (Dkt. No. 46). The time that defense counsel spent responding to that motion was necessary to respond to the SLAPP suit.

But defense counsel inflate the time spent opposing the administrative motion. The opposition was only five pages. On August 13, 2020, there are duplicative entries for reviewing and revising the opposition (1.1 and 1.4 hours) (Burke Decl., Exh. F). And, the partner purportedly spent one hour drafting a half-page proposed order. This order finds 15 hours reasonable for the opposition. (That includes time to revise the joint stipulation regarding the briefing schedule for the anti-SLAPP motion.)

---

[1] This order has accounted for time that defense counsel's paralegal spent on clerical tasks that are unrecoverable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).

10

Defense counsel asks for $310 in costs to cover the filing fee for a *pro hac vice* application (Burke Decl. ¶ 26). But counsel do not point to a local rule or statute that allows for such recovery. This order finds none. Thus, that cost is not recoverable.

In sum, this order finds 135 hours reasonable for defense counsel to respond to the anti-SLAPP suit. Using the proportion of purportedly-incurred fees per attorney and paralegal as well as the actual hourly rates that defense counsel charged, the weighted average of defense counsel's hourly rates is approximately $338 (*see* Burke Decl. ¶ 19; Burke Suppl. Decl. ¶ 7). Multiplying that hourly rate by 135 hours yields $45,630.00 in attorney's fees.

## CONCLUSION

For the foregoing reasons, defendants' motion to strike is **GRANTED**. To the extent stated, defendants' motion for attorney's fees is **GRANTED**. Defendants shall recover **$45,630.00** in attorney's fees. Defendants shall not recover their costs.

**IT IS SO ORDERED.**

Dated: November 8, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11